103 F.3d 830
 1997 Copr.L.Dec. P 27,596, 41 U.S.P.Q.2d 1204,
96 Cal. Daily Op. Serv. 9385,
96 Daily Journal D.A.R. 15,443
 Robert Gene YOUNT; Robert Blue Yount, Plaintiffs-Appellees,
v.
ACUFF ROSE-OPRYLAND, a corporation; Acuff Rose Music, Inc.,
a corporation; Broadcast Music, Inc., a
corporation; William A. McCall, Jr.;
Ethel B. McCall, Defendants,
and
James B. McCall; Geraldine McCall Silva; Deborah McCall
Aleto, Defendants-Appellants.
Robert Gene YOUNT; Robert Blue Yount, Plaintiffs-Appellants,
v.
ACUFF ROSE-OPRYLAND, a corporation; Acuff Rose Music, Inc.,
a corporation; Broadcast Music, Inc., a corporation; James
B. McCall; Geraldine McCall Silva; Deborah McCall Aleto,
William A. McCall, Jr.; Ethel B. McCall, Defendants-Appellees,
Robert Gene YOUNT; Robert Blue Yount, Plaintiffs-Appellants,
v.
ACUFF ROSE-OPRYLAND, a corporation; Acuff Rose Music, Inc.,
a corporation; Broadcast Music, Inc., a corporation; James
B. McCall; Deborah McCall Aleto, Geraldine McCall Silva et
al., Defendants-Appellees.
 Nos. 95-56072, 95-56151, 95-56563.
 United States Court of Appeals,
Ninth Circuit.
 Argued and Submitted Nov. 4, 1996.
Decided Dec. 24, 1996.
 
 Joseph L. Golden, Los Angeles, CA, for appellants and cross-appellees James B. McCall, Geraldine McCall Silva, and Deborah McCall Aleto.
 David Sasseen, Chew & Chung, San Francisco, CA, for appellees and cross-appellants Robert Gene Yount and Robert Blue Yount.
 Judith M. Saffer, Broadcast Music, Inc., New York City, for appellee and cross-appellee Broadcast Music, Inc., and Robert C. Osterberg, Abelman Frayne & Schwab, New York City, for appellee and cross-appellee Acuff-Rose Music, Inc.
 Appeals from the United States District Court for the Central District of California, Edward Rafeedie, District Judge, Presiding. D.C. No. CV-94-06136-ER.
 Before FERNANDEZ and HAWKINS, Circuit Judges, and SCHWARZER, District Judge.*
 FERNANDEZ, Circuit Judge:
 
 
 1
 Robert Gene Yount and his son, Robert Blue Yount, brought this action to recover both domestic and foreign royalties for the song "Release Me" during the renewal copyright period.[1] James B. McCall, Geraldine McCall Silva, and Deborah McCall Aleto (the McCalls) asserted that they were entitled to those royalties because Yount had assigned all royalties from "Release Me" to their predecessor in interest, W.S. Stevenson.[2] The district court determined that Yount was entitled to the domestic royalties because the assignment of them had not referred to the renewal copyright term, but that the McCalls were entitled to the foreign royalties. Both parties appealed.[3] We reverse the judgment in favor of Yount and remand for further proceedings; we affirm the judgment in favor of the McCalls.
 
 BACKGROUND
 
 2
 Between 1949 and 1954, Yount worked as a guitarist and songwriter with a now-deceased musician, Eddie Miller. In the course of this collaboration, Yount and Miller created the musical composition "Release Me." In 1949, Yount, Miller, and Dub Williams, another member of their band, entered into a single-song publishing agreement for "Release Me" with 4 Star Record Company, Inc.[4] The agreement granted 4 Star the right to secure a copyright in "Release Me." The composers granted 4 Star: "[T]he right to secure copyright [in 'Release Me'] throughout the entire world, and to have and to hold the said copyright and all rights of whatsoever nature thereunder existing, including any and all renewals of copyright to which the writer(s) may be entitled hereafter." As consideration for the agreement, 4 Star agreed to pay royalties to the composers, who were to share them equally. In 1958, Yount assigned his royalty rights under the publishing agreement to Stevenson, in a document which read: "I, ROBERT YOUNT, do hereby sell, assign and transfer to W.S. STEVENSON, all of my rights, title and interest in and to the song entitled, 'RELEASE ME.' "
 
 
 3
 The parties agree that a copyright in "Release Me" was registered in the name of the 4 Star Sales Company, Inc. in 1954. The bankruptcy of 4 Star's successor in interest led to the sale of the "Release Me" copyright to Acuff-Rose Music, Inc. As the owner of the copyright, Acuff-Rose is obligated to pay royalties under the song publishing agreement for "Release Me." BMI has at various time collected--and now holds--royalties payable under the song publishing agreement.
 
 
 4
 The initial term of the copyright for "Release Me" ended in 1983, but it was renewed for a second term. Acuff-Rose paid royalties to Yount from 1983 to 1985. At that time, the McCalls wrote to Acuff-Rose, claiming that the 1958 assignment entitled them to the songwriters' royalties. Shortly thereafter, Acuff-Rose notified Yount and the McCalls that it would withhold payment of domestic royalties for "Release Me" until resolution of the dispute. This action eventually followed.
 
 JURISDICTION AND STANDARD OF REVIEW
 
 5
 The district court had jurisdiction pursuant to 28 U.S.C. §§ 1331, 1338(a) and 1367(a). We have jurisdiction pursuant to 28 U.S.C. § 1291.
 
 
 6
 We review the district court's grant of summary judgment de novo. See Warren v. City of Carlsbad, 58 F.3d 439, 441 (9th Cir.1995), cert. denied, --- U.S. ----, 116 S.Ct. 1261, 134 L.Ed.2d 209 (1996); Jesinger v. Nevada Fed. Credit Union, 24 F.3d 1127, 1130 (9th Cir.1994). Our review "is governed by the same standard used by the trial courts under Federal Rule of Civil Procedure 56(c)." Jesinger, 24 F.3d at 1130. We "must determine whether the evidence, viewed in a light most favorable to the nonmoving party, presents any genuine issues of material fact and whether the district court correctly applied the law." Warren, 58 F.3d at 441; see Jesinger, 24 F.3d at 1130.
 
 DISCUSSION
 
 7
 As we have already indicated, this case involves both a claim for domestic renewal term royalties and a claim for foreign royalties. The former involves both issues of domestic copyright law and issues of state contract law. The latter involves only issues of state contract law. We will discuss each in turn.
 
 
 8
 A. The Right to Domestic Royalties.
 
 
 9
 Yount correctly points out that the Copyright Act provisions which existed when he assigned his royalty interest to W.S. Stevenson declared that "the author of [a copyrighted work] if still living ... shall be entitled to a renewal and extension of the copyright in such work for a further term of twenty-eight years." Copyright Act of 1909, as amended, ch. 391, § 24, 61 Stat. 652, 659 (1947). It is equally true that an author can assign the right to the renewal term copyright long before it is scheduled to commence. See Miller Music Corp. v. Charles N. Daniels, Inc., 362 U.S. 373, 375, 80 S.Ct. 792, 794, 4 L.Ed.2d 804 (1960); cf. Abend v. MCA, Inc., 863 F.2d 1465, 1475-76 (9th Cir.1988), aff'd, Stewart v. Abend, 495 U.S. 207, 110 S.Ct. 1750, 109 L.Ed.2d 184 (1990). However, there is a presumption that an assignment of the renewal term has not taken place. Corcovado Music Corp. v. Hollis Music, Inc., 981 F.2d 679, 684 (2d Cir.1993). Thus, an assignment or transfer of the copyright in general terms, which makes no mention of the renewal rights, does not assign the renewal term. See Followay Prods., Inc. v. Maurer, 603 F.2d 72, 75-76 (9th Cir.1979). Nevertheless, "[b]y assigning the renewal copyright in the work without limitation, as in Miller Music, the author assigns all of [the rights of the copyright holder]." Stewart, 495 U.S. at 220, 110 S.Ct. at 1760. If the author survives to the commencement of the renewal period, the assignment is effective. See Fred Fisher Music Co., Inc. v. M. Witmark & Sons, 318 U.S. 643, 657-59, 63 S.Ct. 773, 779-80, 87 L.Ed. 1055 (1943); Marascalco v. Fantasy, Inc., 953 F.2d 469, 475-76 (9th Cir.1991), cert. denied, 504 U.S. 931, 112 S.Ct. 1997, 118 L.Ed.2d 592 (1992).
 
 
 10
 There can be little doubt that in 1949 Yount did assign the whole of the renewal term copyright and that he did survive to the commencement of that term. Thus, it cannot be gainsaid that he failed to retain any claim to the underlying legal interest in the copyright itself. Nevertheless, Yount asserts that the federal common law rule of construction that applies to the assignment of renewal terms of a copyright also governs assignment of contractual royalty interests alone. We do not agree.
 
 
 11
 Yount first argues that the copyright laws were designed to protect authors. No doubt they were. However, that assertion does not significantly advance analysis or indicate that contractual royalty interests have a protection separate from the protection afforded to renewal of the term of the copyright itself. Authors are not the only ones protected by the Copyright Act. Moreover, protection of authors may well come from laws that give them the freedom to contract at will rather than from laws which prevent them "from realizing on their assets when they are most in need of funds." Fred Fisher Music, 318 U.S. at 657, 63 S.Ct. at 779. Generally speaking, it is for Congress, not the courts, to decide just how much protection is needed and what form that protection should take. Id. at 656-58, 63 S.Ct. at 779-80. Congress has not declared a special rule regarding contractual royalties during the renewal term of copyright.
 
 
 12
 Yount, however, asserts that certain other statutory and common law provisions demonstrate that both Congress and the courts have sought to throw up special protections around authors' contractual royalty rights. He points to a provision which allows beneficial owners of a right under a copyright to sue for its infringement and says that the provision indicates that Congress intended to protect authors' royalty interests. See 17 U.S.C. § 501(b). However, that provision only indicates an intent to allow every beneficial owner to protect his interests, just in case the legal owner is not doing so. In other words, because an infringer may well injure those who have rights to royalties, standing has been conferred upon them. That, however, has no special reference to authors. It protects anyone who may own a right to royalties, but a determination of who those individuals may be in a given case is, again, a question of state law. Moreover, holding a royalty interest does not bespeak an interest in the underlying copyright itself-a royalty is simply an interest in receiving money when the owner of the copyright exploits it. Cf. Fantasy, Inc. v. Fogerty, 654 F.Supp. 1129, 1130-31 (N.D.Cal.1987).
 
 
 13
 Yount also points to a case which indicated that an egregious breach of the contract transferring a copyright may well give a royalty holder a right of rescission. Fain v. Irving Trust Co. (In re Waterson, Berlin & Snyder Co.), 48 F.2d 704, 709 (2d Cir.1931). But rescission itself is a creature of state law. See Fantasy, Inc. v. Fogerty, 984 F.2d 1524, 1529 (9th Cir.1993) (Fantasy II ), rev'd on other grounds, 510 U.S. 517, 114 S.Ct. 1023, 127 L.Ed.2d 455 (1994). Nothing in Waterson suggests the contrary. Moreover, while the court did refer to "composers," nothing hinged on that designation. The case happened to involve composers. There is no reason to believe that a person to whom the composer had transferred all of his contractual rights would not have had the same right of rescission, if the legal owner had destroyed " 'the essential objects of the contract' " in a manner " 'so fundamental and pervasive as to result in substantial frustration.' " Waterson, 48 F.2d at 709 (citations omitted). Nothing in that case suggests that upon so egregious a breach all rights would revert to the composer, even though he had assigned his interest in the contract to someone else. Nothing suggests that the court would be less concerned about a person to whom the composer had transferred his interests.
 
 
 14
 We recognize that Waterson declared that the obligation to pay royalties cannot be severed from the ownership of the copyright itself and then destroyed in bankruptcy. Id. at 710. But that merely means that the copyright owner will always be burdened with the concomitant contractual obligation of paying royalties and cannot shrug it off through bankruptcy proceedings. To that extent ownership and obligation are inexorably intertwined, but that does not increase the royalty holder's rights or protections beyond those set forth in the contract.
 
 
 15
 Because the royalty does arise out of the contract itself, it is that contract which governs the rights of a holder of a royalty interest. Thus, the apposite cases are those which indicate that royalty rights reserved in a contract transferring a copyright are a concern of state contract law only and are not a concern of federal law at all. We have indicated that state law determines the rights and obligations arising under a publishing contract that assigns a copyright. See Topolos v. Caldewey, 698 F.2d 991, 993-95 (9th Cir.1983); see also Vestron, Inc. v. Home Box Office, Inc., 839 F.2d 1380, 1382 (9th Cir.1988) (stating that an action for "contractual rights to ownership or royalties" is one that seeks "to vindicate rights created under state law"). We have also looked to state law in determining whether the withholding of royalties effected a material breach of a copyright assignment agreement. See Fantasy II, 984 F.2d at 1529-31.
 
 
 16
 Similarly, other cases have declared the principle that state law governs construction of royalty obligations. See, e.g., Cortner v. Israel, 732 F.2d 267, 272 (2d Cir.1984) (breach of an implied obligation regarding royalties may create liability "at common law," but not under federal copyright law); Gordon v. Vincent Youmans, Inc., 358 F.2d 261, 262-63 (2d Cir.1965) (state law applied to construction of agreement assigning rights to a song); see also T.B. Harms Co. v. Eliscu, 339 F.2d 823, 827 (2d Cir.1964) (copyright statutes do not create a "right of action to enforce or rescind assignments of copyrights"); cf. Luckett v. Delpark, 270 U.S. 496, 502, 46 S.Ct. 397, 399, 70 L.Ed. 703 (1926) ("It is a general rule that a suit by a patentee for royalties under a license or assignment granted by him, or for any remedy in respect of a contract permitting use of the patent, is not a suit under the patent laws of the United States...."); Schwarzkopf Dev. Corp. v. Ti-Coating, Inc., 800 F.2d 240, 244 (Fed.Cir.1986) (actions to collect patent royalties arise under state contract law). Thus, although we have never directly so held, our prior decisions and those of other courts establish the principle that construction of the assignment of royalty interests is a question of state law.
 
 
 17
 When Yount transferred the underlying copyright, he obtained a contractual right to royalties. He no longer had a copyright; he had a mere contractual right-a promise by 4 Star that it would make royalty payments. At that point federal copyright law essentially ceased to be concerned with how that contractual royalty right or assignments of it would be enforced. Yount's right to royalties included both the original term and the renewal term. Therefore, in 1958 when Yount assigned "all of [his] rights, title and interest," construction of that assignment became a question of state law only, and the district court erred when it granted summary judgment to Yount based upon renewal term jurisprudence.[5]
 
 
 18
 We express no opinion on the proper construction of the domestic renewal term royalty assignment from Yount to Stevenson as far as state contract law is concerned. That issue remains for the consideration of the district court.
 
 
 19
 B. The Right to Foreign Royalties.
 
 
 20
 It is axiomatic that United States copyright law does not apply extraterritorially. See 3 David Nimmer & Melville B. Nimmer, Nimmer on Copyright, § 17.02 (1996). Whether Yount is entitled to foreign royalties earned during the renewal term is, therefore, purely an issue of contract law. That requires interpretation of his 1958 assignment to Stevenson, as it relates to foreign royalties.
 
 
 21
 Under California law,[6] "[a] contract must be so interpreted as to give effect to the mutual intention of the parties as it existed at the time of contracting, so far as the same is ascertainable and lawful." Cal.Civ.Code § 1636. However, when a contract has been reduced to writing, a court must ascertain the parties' intent from the writing alone, if possible. Id. § 1639. Contract interpretation is governed by the objective intent of the parties as embodied in the words of the contract. Beck v. American Health Group Int'l, Inc., 211 Cal.App.3d 1555, 1562, 260 Cal.Rptr. 237, 242 (1989). And, "[t]he words of a written instrument are generally to be understood in their ordinary and popular sense." Id. A court will look beyond the terms of the writing where it appears that the parties intended to ascribe a "technical" or "special" meaning to the terms used. Cooper Cos. v. Transcontinental Ins. Co., 31 Cal.App.4th 1094, 1101, 37 Cal.Rptr.2d 508, 511 (1995). However, evidence of the "subjective, uncommunicated intent of one of the parties" cannot be used to contradict the express terms of the contract. Alex Robertson Co. v. Imperial Cas. & Indem. Co., 8 Cal.App.4th 338, 346, 10 Cal.Rptr.2d 165, 170 (1992).
 
 
 22
 Yount assigned "all" of his "rights, title, and interest" in the song to Stevenson. Those terms, if read in their "ordinary and popular sense," would encompass all of Yount's royalty rights from the song, including the right to foreign royalties earned during the whole term of the contract. To prevail at trial, Yount would have to demonstrate that he and Stevenson mutually intended to exclude foreign royalties despite their use of the term "all" in the 1958 assignment; to survive a motion for summary judgment, Yount had to show that the evidence at least presented a genuine issue of material fact on that question. Yount stated that he and Stevenson never discussed foreign royalties, prior to execution of the 1958 assignment. Moreover, he did not present evidence of some industry custom or some course of dealing which would show that a transfer of all foreign royalties was excluded. That indicates that as far as foreign royalties are concerned "all" meant just what it said-his whole interest under the 4 Star agreement. Even if Yount harbored a subjective intent to exclude foreign royalties from the assignment, it is clear that he never said so. To overcome the plain meaning of the written contract, however, Yount must introduce evidence that both he and Stevenson affirmatively intended to exclude foreign royalties from the assignment-that for them "all" meant "less than all." Yount has introduced no such evidence. Thus, the district court did not err when it granted summary judgment to the McCalls on the question of foreign royalties.[7]
 
 
 23
 C. The Failure to Award Attorneys Fees.
 
 
 24
 Yount appeals the district court's denial of his request for attorney's fees. A district court's refusal to grant attorney's fees pursuant to 17 U.S.C. § 505 is reviewed for an abuse of discretion. Fantasy, Inc. v. Fogerty, 94 F.3d 553, 556 (9th Cir.1996); Maljack Prods., Inc. v. GoodTimes Home Video Corp., 81 F.3d 881, 889 (9th Cir.1996); Smith v. Jackson, 84 F.3d 1213, 1221 (9th Cir.1996). We have reversed the district court's decision and remanded the case on the one issue that had been decided in Yount's favor-the claim to domestic royalties. We have affirmed the district court's decision on the issue decided in the McCalls' favor-the claim to foreign royalties. Because Yount has not prevailed on any of his claims at this time, he is not entitled to attorney's fees at this time.
 
 CONCLUSION
 
 25
 There can be little doubt that Yount made an assignment of his royalty rights to Stevenson. He now seeks to cast himself in the mold of a put-upon author, who should have the special protection of the Copyright Act to save him from his own lack of discretion. But authors are not "wards under guardianship of the law." Fred Fisher Music Co., 318 U.S. at 657, 63 S.Ct. at 779. Indeed, we, along with the Supreme Court, assume that they would resent being treated as if they were. See id.
 
 
 26
 Congress and the courts have provided some protection for authors as far as the twenty-eight-year copyright renewal term is concerned, but that form of protection ends once the term has been explicitly transferred. Authors are free to deal with any ensuing contract rights, such as royalties, as they will, subject only to the provisions of state law. In this case, we express no opinion on how those state law provisions may affect the right to royalties during the domestic copyright renewal term, although we agree with the district court that the foreign copyright royalties were validly transferred.
 
 
 27
 AFFIRMED in part, REVERSED in part, and REMANDED. Costs on appeal are awarded to McCall from appellants. BMI and Acuff-Rose shall bear their own costs on appeal.
 
 
 
 *
 The Honorable William W. Schwarzer, Senior United States District Judge for the Northern District of California, sitting by designation
 
 
 [1]
 Unless otherwise stated, all references to Yount are to Robert Gene Yount
 
 
 [2]
 W.S. Stevenson was a name used by William A. McCall
 
 
 [3]
 Also involved in this appeal are defendants Acuff-Rose Music, Inc., and Broadcast Music, Inc. Acuff-Rose is the legal owner of the copyright in "Release Me." With regard to the domestic royalties, Acuff-Rose and BMI are acting essentially as stakeholders because they have withheld payment of those royalties pending the outcome of the dispute between Yount and the McCalls. With regard to the foreign royalties, Acuff-Rose and BMI have continued making payments to the McCalls during the pendency of this dispute. On appeal, Acuff-Rose and BMI filed a joint brief arguing for affirmance of the district court's judgment on both the domestic and foreign royalty issues
 
 
 [4]
 In 1957, Yount and Miller entered into a second publishing agreement for "Release Me," with 4 Star Sales Company, Inc. That agreement substituted Stevenson for Dub Williams. 4 Star Sales Company, Inc., which is also the party named on the copyright registration for "Release Me," was an affiliated corporation of 4 Star Record Company, Inc. Because the distinction between the two companies and the two agreements is immaterial in the instant case, both will be referred to as "4 Star" throughout this opinion
 
 
 [5]
 Yount argues that the McCalls are estopped from denying that their interest in the royalties is an interest in the copyright itself because they obtained recognition of their continuing royalty in the 4 Star bankruptcy. But the continuation of that interest, despite bankruptcy, is not inconsistent with the McCalls' present position. The most they obtained was the protection afforded to all holders of contractual royalty interests against owners of the copyright itself. See Waterson, 48 F.2d at 710. That does not suggest that authors have special protection against their assignees; if anything, it suggests that all holders of contractual royalty rights are protected
 
 
 [6]
 California law applies because a federal court exercising jurisdiction over non-federal claims must usually apply the substantive law of the state in which it sits. See Erie R.R. Co. v. Tompkins, 304 U.S. 64, 78-80, 58 S.Ct. 817, 822-23, 82 L.Ed. 1188 (1938). No party to this case claims that some other body of law should apply
 
 
 [7]
 Yount also argues that the McCalls assigned their rights to foreign royalties to 4 Star. There is, however, no occasion for us to decide that question. Even if they had done so, Yount does not explain how that would aid his case, or increase his rights