Isaac HAYES, an individual, Plaintiff,

v.

CARLIN AMERICA, INC., Bro 'N Sis Music, Inc., Rondor Music International, Inc. d/b/a Irving Music, Inc. and Almo Music Corp., Aaron Schechter, Tracy Catron, Huey Meaux, Music Enterprises, Inc., Fantasy, Inc., and Incense Productions, Inc., Defendants.

No. 99 CIV. 12516 (LLS).

United States District Court,
S.D. New York.

Oct. 16, 2001.

Rubinbaum LLP (Jane G. Stevens, Christopher T. Bavitz, of counsel), New York City, for plaintiff.

Abelman, Frayne & Schwab (Robert C. Osterberg, of counsel), New York City, for defendants.

## Opinion and Order

STANTON, District Judge.

Plaintiff Isaac Hayes ("Hayes") seeks a declaratory judgment that he is he owner of both the copyrights and the rights to collect royalties during the copyright renewal terms for various compositions which were first published or registered for copyright between January 1, 1968 and December 22, 1976 (the "compositions") [1]. Defendants Carlin America, Inc. ("Carlin"), Bro 'N Sis Music, Inc. ("BNS"), Aaron Schechter, Tracy Catron and Music Enterprises, Inc. ("MEI") (collectively the "royalty defendants") move for summary judgment dismissing the complaint against them under F.R.Civ.P. 56(c), claiming that the copyright renewal term does not affect royalty rights, and that in any case Hayes's transfer of royalty rights to their predecessor in interest was sufficient to cover any renewal rights.

The motion is granted in part, and denied in part for lack of a present case or controversy.

Background

The following facts are undisputed for the purposes of this motion.

Isaac Hayes is a well known entertainer who began his career in the 1960's. Hayes alleges that he

> is an icon in the musical genres popularly known as R & B, soul, funk, disco, jazz, and hip-hop. His musical contributions include significant accomplishments as a composer, producer, arranger, vocalist, and performer on piano, keyboards, organ, and saxophone. As a musical performer, Hayes has a signature vocal and instrumental style, instantly recognizable by the public.

Third Amended Complaint ("Complaint"), ¶ 12. In 1969, Hayes's album *Hot Buttered Soul* sold over a million copies, and in 1971 he won an Academy Award for Best Score (as well as several other awards) for the movie *Shaft. See* Hayes Decl., ¶ 3–4. He has acted in over twenty films, appeared in several television series, and recently has performed as the voice of Chef in the television series and movie *South Park. See* Compl., ¶ 17. Hayes hosts a morning radio show in New York on 98.7 KISS–FM. *See id.*

As a composer and performer in the late 1960's, Hayes wrote several copyrightable songs and recorded for Stax Records ("Stax") in Memphis, Tennessee. He entered into a series of contracts with Stax affiliates East Publishing, Inc. and Birdees Music Corp. between 1968 and 1974 in which he assigned his copyright interests in several musical works in exchange for royalties.

In the early 1970's, Stax experienced financial difficulties and defaulted on royalty payments to Hayes. Hayes obtained loans from Union Planters National Bank of Memphis ("Planters Bank") and granted

---

**1.** His list of the compositions is attached as Exhibit A to the Third Amended Complaint.

the bank security interests in his property. Three Uniform Commercial Code financing statements ("UCC–1's") described the property in which the bank held a security interest. The first financing statement, dated September 24, 1974, covered the following:

All contract rights, accounts, accounts receivable, notes receivable and general intangibles, including but not limited to *all contract rights, rights under any existing or future artist, writer or production contract,* rights under any motion picture contract, *royalties,* and advances, *whether now existing or hereafter arising or acquired.*

(emphasis added). A second financing statement, dated November 20, 1975, covered:

All equipment exclusive of Debtor's personal musical instruments, accounts, *contract rights,* accounts receivable, inventory, general intangibles and *copyrights of Debtor, or any proceeds thereof, whether now owned or hereafter acquired,* and including without limiting, the generality of all recording equipment, tapes, master tapes or discs, masters and revenues arising from and pursuant to agreements by any Debtor with ABC Records, Inc., American Broadcasting, Inc. and/or ABC/Dunhill Music, Inc.; and, including any fixtures, equipment or any of the foregoing located in or attached to the real property situated at and known as 247 Chelsea Avenue, Memphis, Tennessee, 38107.

(emphasis added). The third financing statement covered "all household furniture and appliances now or hereafter acquired by the debtor" totaling $25,705.08.

On December 22, 1976, Hayes filed for bankruptcy in the United States District Court for the Western District of Tennessee.

Planters Bank commenced a proceeding to collect on its outstanding loans, totaling $1,508,680.81. The court approved a settlement between the bank and the Bankruptcy Trustee in a December 20, 1977 Order, which assigned the property described in the UCC–1's to the bank and allowed Planters Bank to foreclose on the property. *See* Def. Ex. O.

On January 18, 1978, the court discharged Hayes from bankruptcy. Since the time of the bankruptcy, Hayes has not received royalties from the use of the compositions.

BNS[2], Aaron Schechter, Tracy Catron and MEI (the royalty defendants) have collected royalties from the use of the Hayes compositions in the past and assert a right to continue to do so, as the copyrights of the compositions enter their renewal terms. Their claim of ownership of the royalty rights stems from Hayes's transfer to Planters Bank, which assigned its interest in Hayes's royalties to their predecessors in interest over the years, who ultimately in turn assigned their interests to the royalty defendants. *See* Def. Ex. Q and U.

The present motion by the royalty defendants addresses only interests in royalty rights. The issue on this motion is whether the royalty defendants on the one hand, or Hayes on the other, are entitled to royalties from the licensed uses of the compositions. The issue with respect to the right to royalties during the renewal term of the compositions' copyrights is further restricted (for reasons explained be-

---

**2.** Carlin joins in this motion as a "corporate affiliate" of BNS and asserts no claim of ownership of the royalty rights.

low) to copyrights which have already been renewed.

## Discussion

Summary judgment should be granted only when, after reviewing the evidence in the light most favorable to the non-moving party, there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Fed. R.Civ.P. 56(c). The moving party must demonstrate the absence of a disputed issue of material fact. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). To avoid summary judgment, the non-movant must set forth specific facts showing that there is a genuine issue for trial. *Id.* at 324, 106 S.Ct. 2548.

1. Copyright Renewal Terms, and Transfers of Copyright Renewal Terms

■ Copyrights for works created before 1978 endure for an original term of 28 years and for an additional renewal term of 67 years. *See* 17 U.S.C. § 304(a)(1). The renewal term "creates a new estate," *G. Ricordi & Co. v. Paramount Pictures, Inc.*, 189 F.2d 469, 471 (2d Cir.1951), in order to permit "the author, originally in a poor bargaining position, to renegotiate the terms of the grant once the value of the work has been tested." *Stewart v. Abend*, 495 U.S. 207, 218–19, 110 S.Ct. 1750, 1759, 109 L.Ed.2d 184 (1990). The author may assign his interest in the copyright renewal term during its original term, but the assignment is valid only if the author is alive at the start of the renewal term. *See Miller Music Corp. v. Charles N. Daniels, Inc.*, 362 U.S. 373, 374–75, 80 S.Ct. 792, 794, 4 L.Ed.2d 804 (1960) (the assignment "is valid against the world, if the author is alive at the commencement of the renewal period."). If the author dies before the renewal term vests, the author's statutory successors (widow, widower, children, executors or next of kin) obtain the renewal term, and any prior assignment by the author is not binding on them. *See* 17 U.S.C. § 304(a)(1)(C). "These results follow not because the author's assignment is invalid but because he had only an expectancy to assign.... Until [the renewal period] arrives, assignees of renewal rights take the risk that the rights acquired may never vest in their assignors." *Miller Music*, at 794–96.

■ Since copyright renewal terms are distinct estates that can be transferred or retained independently from the original term, transfers of copyright interests do not automatically convey the renewal term, for "there is a strong presumption against the conveyance of renewal rights." *Corcovado Music Corp. v. Hollis Music, Inc.*, 981 F.2d 679, 684 (2d Cir.1993). But "general words of assignment can include renewal rights if the parties had so intended." *Venus Music Corp. v. Mills Music, Inc.*, 261 F.2d 577, 578 (2d Cir.1958). Use of the particular word "renewal" is not necessary to transfer renewal rights. Transfers using the words "forever" and "hereafter", *see Corcovado*, 981 F.2d at 685, and "perpetual", *see P.C. Films Corp. v. MGM/UA Home Video Inc.*, 138 F.3d 453, 457 (2d Cir.1998), have been held to convey the renewal term copyright. In any event, the author must be alive at the start of the renewal term for his assignment of it to be valid.

It must be kept firmly in mind that the present motion is only secondarily (at most) concerned with copyright renewal terms. It is primarily concerned with royalties, which according to the *Yount* case (discussed below) are created by contracts of assignments of copyrights, and hence are controlled by contract law and unaffected by whether the copyright is in its original or renewal term.

### 2. *Yount v. Acuff Rose–Opryland*

■ In *Yount v. Acuff Rose–Opryland,* 103 F.3d 830 (9th Cir.1996), the Ninth Circuit addressed whether the right to receive royalties (which is not an "exclusive right" listed in the Copyright Statute, *see* 17 U.S.C. § 106) is a copyright interest such that the royalty right is affected by the copyright's original and renewal term.

In *Yount,* the author had granted his copyright, including the renewal term, to a publishing company in exchange for royalties. He later sold his royalty rights to the defendants' predecessor in interest, without mentioning the renewal term: " 'I, ROBERT YOUNT, do hereby sell, assign and transfer to W.S. STEVENSON, all of my rights, title and interest in and to the song entitled, RELEASE ME.' " 103 F.3d at 832. (At that point, his only remaining interest was the right to receive royalties.) Yount was still alive when the initial term of copyright ended, so his earlier grant of the renewal term was valid. The question was whether the right to royalties was governed by copyright law concerning original and renewal terms, or by state contractual law concerning assignments of contract rights.

The court held that "holding a royalty interest does not bespeak an interest in the underlying copyright itself a royalty is simply an interest in receiving money when the owner of the copyright exploits it." *Id.* at 834. It explained that "[b]ecause the royalty does arise out of the contract itself, it is that contract which governs the rights of a holder of a royalty interest." *Id.* Thus, state contract law, rather than the federal law applicable to renewal terms of copyrights, governed the assignment of contractual royalty interests. Accordingly, Yount's conveyance of "all" his royalty interests stood unhampered by federal copyright law regarding original and renewal terms.

The Second Circuit has recognized that interpretations of royalty contracts are governed by state law. *See, e.g., Cortner v. Israel,* 732 F.2d 267, 272 (2d Cir.1984) (dicta suggesting that one of the defendants "might be liable to [plaintiffs] in a state court action at common law for breach of an implied obligation not to use the musical theme in a way that would deprive [plaintiffs] of their right to royalties"); *Gordon v. Vincent Youmans, Inc.,* 358 F.2d 261, 263–64 (2d Cir.1965) (evaluating an assignment of a copyright in exchange for royalties according to New York contract principles). Other cases have held that federal courts lack jurisdiction over copyright or patent suits when the only issue is payment of royalties under a contract. *See Luckett v. Delpark,* 270 U.S. 496, 502, 46 S.Ct. 397, 70 L.Ed. 703 (1926) ("a suit by a patentee for royalties . . . or for any remedy in respect of a contract permitting use of the patent, is not a suit under the patent laws."); *T.B. Harms Co. v. Eliscu,* 339 F.2d 823, 827 (2d Cir.1964) (the copyright law "create[s] no explicit right of action to enforce or rescind assignments of copyrights, nor does any copyright statute specify a cause of action to fix the locus of ownership").[3]

Since royalty rights are contract rights (rather than exclusive rights under federal copyright law), and because there is no renewal term for a contractual royalty right, whether Hayes transferred his royalty rights depends on the language of the transfer without reference to copyright rules governing renewal terms.

### 3. *Cristeval*

An unpublished district court case which on analysis runs counter to *Yount* should be addressed. In *Bro 'N Sis Music, Inc.*

---

**3.** In this case, Hayes alleges diversity as well as federal question jurisdiction.

*v. Cristeval Music, Inc. and Al Schmitt,* 98 Civ. 9385 (C.D.Cal., Nov. 9, 1998) ("*Cristeval*"), plaintiff BNS (which is also a moving royalty defendant in this case) sought a declaration that it owned the copyright and the right to royalties during the copyright renewal term of a song it had purchased from the author's sister after the author had died and after the renewal term had vested. The court held that since the author had not survived until the start of the renewal term, BNS owned the copyright renewal term which it had purchased from the deceased author's sister and the right to renewal term royalties "free and clear" of the author's prior assignment of her rights to the defendants, which she had made before the renewal term began. *Cristeval,* Nov. 10, 1999 Order, at 1. The court held that the death of the author, which cut off defendants' interest in the royalties, vested the renewal term in the author's sister, who thus had the right to convey it to BNS. This left BNS with "no obligation to make [royalty] payments to the defendants." *Id.*

Thus, the *Cristeval* court treated royalties in the renewal term like a renewal copyright interest, subject to the condition precedent that the author be alive at the start of the renewal term. Since the author in *Cristeval* was not alive when the copyright's renewal term began, the court held that her statutory successor, rather than the prior transferee, owned the royalties during the renewal term. In *Yount* (where the author was alive at the commencement of the renewal term), the court held that royalty rights during the renewal term belonged to the author's assignee, not the author.

To *Yount*'s holding that an assignment of royalties involves only a contract right,

unaffected by the original or renewal term of the copyright, *Cristeval* seems inconsistent.[4] On the other hand, if the author's death before the renewal term invalidates his prior assignment of future royalties, *Yount* seems inconsistent.

Whatever the logical inconsistency, it seems clear that the major factor causing variance between the two decisions, and the factor on which the outcome in *Cristeval* depends, is that in *Cristeval* the author died before the start of the renewal term. In the present case, *Cristeval* need not be considered, because Hayes has survived into the beginning of all the renewal terms which have vested to date, and the circumstances of those which have not yet vested are too speculative to present a justiciable controversy.

4. Ripeness

■ Article III of the Constitution limits the jurisdiction of the federal courts to cases or controversies "of sufficient immediacy and reality," *Maryland Casualty Co. v. Pacific Coal & Oil Co.,* 312 U.S. 270, 61 S.Ct. 510, 85 L.Ed. 826. 273, 312 U.S. 270, 61 S.Ct. 510, 85 L.Ed. 826 (1941), and not "hypothetical or abstract dispute[s]," *Marchi v. Bd. of Coop. Educ. Servs. of Albany,* 173 F.3d 469, 478 (2d Cir.1999), *cert. denied,* 528 U.S. 869, 120 S.Ct. 169, 145 L.Ed.2d 143. This limitation applies equally to declaratory judgment actions. *See In re Prudential Lines, Inc.,* 158 F.3d 65, 70 (2d Cir.1998) (the facts must demonstrate a " 'substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment' ") (citing *Maryland Casualty* ).

Adjudication of the parties' rights concerning the works which have not entered

---

4. It seems to me that the weight of reason and authority favors *Yount* which, if it were necessary to choose, I would follow.

their copyright renewal terms is premature. We do not know whether Hayes will be alive at the start of the copyright renewal term or, if he is not, who his statutory successors will be. We do not know whether transfers of the royalties may take place in the future, or who the royalty assignees will be. The dispute with regard to future royalties during the copyright renewal terms may be settled, or may never arise. Thus a dispute over the ownership of those future rights is "hypothetical and abstract" and does not now present a case or controversy. Any decision regarding such future rights would be advisory only. The only claims that are ripe are those concerning the compositions that have already entered their renewal terms.

The claims of both the plaintiff and the royalty defendants concerning royalties on compositions after they enter their renewal terms in the future are dismissed for lack of a present case or controversy.

5. The Transfers of the Contractual Right to Royalties

■ Under *Yount,* whether Hayes transferred his contractual royalty rights depends upon the language of the transfer. The UCC–1's transferred "all contract rights, rights under any existing or future... contract... [and] royalties... whether now existing or hereafter arising or acquired." UCC–1 dated Sept. 24, 1974. Under the plain meaning of "hereafter arising or acquired" all future royalties that Hayes could receive at any time from the use of the compositions were transferred to the bank, in return for its loans to Hayes.

6. With Respect to Compositions Whose Copyrights Are Now In Their Renewal Terms: The Transfers if Royalty Rights are Copyright Interests

Even if *Yount* is incorrect and royalty rights are governed by copyright law, the language of the UCC–1's was sufficient to transfer the right to royalties during the renewal term. As discussed previously, the word "renewal" need not be used in the transfer, and general words of assignment can suffice to transfer a renewal term copyright interest. *See Corcovado,* 981 F.2d at 684. "Existing or future" and "hereafter arising or acquired" are enough to cover the royalties payable in the copyright renewal term, and to defeat the presumption against the conveyance of renewal rights along with the original term copyrights.

■ Hayes asserts that there are factual issues concerning the intent of the parties to convey the renewal term, but all that he offers is his own subjective intent:

> It was not my intention to pledge, encumber, or transfer to the Bank as collateral for the loans that it was making to me my rights in the renewal term of my copyrighted compositions or my right to income from the exploitation of those compositions in the renewal term. Indeed, if any request had been made of me to transfer these rights that would not vest in some instances for almost three decades I would have found the suggestion unconscionable and ludicrous.

Hayes Decl., ¶ 12. Hayes does not claim that he expressed his view to any party to the loan transactions; indeed, he accepts that there was no discussion of the point. *See id.* ("At no time in connection with loans from the Bank, including in connection with my execution of various [UCC–1's] did anyone associated with the Bank state to me, in words or substance, that these documents were intended to transfer to the Bank the right to foreclose on the renewal term of copyrights in compositions written and controlled by me."). As stated in *Rule v. Brine, Inc.,* 85 F.3d 1002, 1010 (2d Cir.1996) an unexpressed subjective

161

intent of a party is not binding upon another party:

> [T]he question of whether or not a binding contract exists "is not dependent on the subjective intent" of either party. *Brown Bros. Electrical Contractors, Inc. v. Beam Construction Corp.*, 41 N.Y.2d 397, 399, 393 N.Y.S.2d 350, 351, 361 N.E.2d 999 (1977). Instead, "[w]hat matters are the parties' expressed intentions, the words and deeds which constitute objective signs in a given set of circumstances." *R.G. Group, Inc. v. Horn & Hardart, Co.*, 751 F.2d 69, 74 (2d Cir.1984).

*See also Davis v. Sliney*, 1988 WL 75331 (Tenn.Ct.App.), at *2 (under Tennessee law, "the subjective intent or understanding of either party as to the type of contract they entered cannot be considered"). Thus, evidence concerning Hayes's subjective, unexpressed intent would be inadmissible at trial, and is not considered to raise a factual issue barring summary judgment. *Cf. Yount*, 103 F.3d at 836 (no genuine issue of material fact regarding Yount's conveyance of foreign royalties because the parties never discussed foreign royalties and Yount's subjective intent not to include them was never expressed, so " 'all' meant just what it said his whole interest under the... agreement").

### 7. Estoppel

■ Hayes claims that defendant BNS should be judicially estopped from claiming that royalty interests are contract rights due to the fact that it prevailed, upon an apparently inconsistent theory, in the *Cristeval* case. Several factors are relevant to judicial estoppel, including whether the parties are the same in both cases, whether the positions taken are "clearly inconsistent", whether the first court relied on the party's earlier position, and whether unfairness would result if the party is not estopped. *See New Hamp-shire v. Maine*, 532 U.S. 742, ———, 121 S.Ct. 1808, 1814–15, 149 L.Ed.2d 968 (2001).

Since in *Cristeval* the grantor died before the renewal term, the argument is unpersuasive with respect to the only renewal terms considered here, those which have started during Hayes's life. However, in any event judicial estoppel is not warranted. First, the parties in the two cases are different, so BNS did not "assume a contrary position... to the prejudice of the party who has acquiesced in the position formerly taken by [it]." *New Hampshire*, 121 S.Ct. at 1814 (quoting *Davis v. Wakelee*, 156 U.S. 680, 689, 15 S.Ct. 555, 39 L.Ed. 578 (1895)). Second, because in *Cristeval* the author had died before the vesting of the renewal term and the language of the transfer did not refer to "existing or future" or "hereafter arising or acquired" rights, the positions taken in *Cristeval* and this case are not clearly inconsistent. Finally, BNS does not gain an "unfair advantage or impose an unfair detriment," *id.*, over Hayes if not estopped, since Hayes did not rely on BNS's earlier position to his detriment and his interests were not implicated in that case.

### 8. Copyright Infringement Claim

■ The royalty defendants also seek dismissal of Hayes's copyright infringement claim against them. To state a claim for copyright infringement, a plaintiff must show that the alleged infringer violated the exclusive rights of a copyright owner. *See* 17 U.S.C. § 501(a). Since the right to receive royalties is not a copyright interest, collecting royalties unlawfully is not copyright infringement. *Cf. T.B. Harms*, 339 F.2d at 825 ("Infringement, as used in copyright law, does not include everything that may impair the value of the copyright; it is doing one or more of those things which § 1 of the [1909] Act, 17 U.S.C. § 1,

reserves exclusively to the copyright owner."). In addition, the claim fails because the royalty defendants' receipt of royalties has been lawful. Plaintiff offers no support for a claim that the royalty defendants so controlled or instigated acts by others as to be liable as vicarious or contributory infringers.

## Conclusion

For the reasons stated, (1) the claims of the parties' regarding royalties from future uses of the compositions after the future expiration of their original copyright terms are dismissed for lack of "case or controversy" jurisdiction, (2) the royalty defendants' motion for judgment in their favor is granted with respect to their receipt of royalties from uses of the compositions during their copyrights' original terms and their renewal terms which have already commenced, and (3) the complaint against defendants Carlin America, Inc., Bro 'N Sis Music, Inc., Aaron Schechter, Tracy Catron and Music Enterprises, Inc. is dismissed. The Clerk will enter judgment accordingly.

So ordered.