RECOMMENDED FOR FULL-TEXT PUBLICATION
Pursuant to Sixth Circuit Rule 206

File Name: 05a0014p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

---

ROBERT RITCHIE, presently known as Kid Rock; TOP
DOG RECORDS, INC., and KID ROCK SUPERSTORES,
INC.,

*Plaintiffs/
Cross-Defendants-Appellees,*

No. 03-1279

*v.*

ALVIN B. WILLIAMS; EB-BRAN PRODUCTIONS, INC.;
BOW-WOW PUBLISHING, INC., and TOP DOG
PUBLISHING,

*Defendants/
Cross-Plaintiffs-Appellants.*

---

Appeal from the United States District Court
for the Eastern District of Michigan at Detroit.
No. 01-71712—Nancy G. Edmunds, District Judge.

Argued: October 29, 2004

Decided and Filed: January 11, 2005

Before: MERRITT and GILMAN, Circuit Judges; HOOD, District Judge.[*]

---

## COUNSEL

**ARGUED:** Stephanie L. Hammonds, LAW OFFICE OF STEPHANIE L. HAMMONDS, Detroit, Michigan, for Appellants. William H. Horton, COX, HODGMAN & GIARMARCO, Troy, Michigan, for Appellees. **ON BRIEF:** Stephanie L. Hammonds, LAW OFFICE OF STEPHANIE L. HAMMONDS, Detroit, Michigan, Gregory J. Reed, GREGORY J. REED & ASSOCIATES, Detroit, Michigan, Robert S. Nolan, CANTOR COLBURN, Troy, Michigan, for Appellants. William H. Horton, Christopher J. Nelson, COX, HODGMAN & GIARMARCO, Troy, Michigan, for Appellees.

---

[*]The Honorable Joseph M. Hood, United States District Judge for the Eastern District of Kentucky, sitting by designation.

———————

**OPINION**

———————

MERRITT, Circuit Judge.  This case arises from a dispute between a singer-songwriter known as "Kid Rock" (Robert Ritchie) and a promoter, Alvin Williams, and his group of associates, who entered into a series of music contracts in 1989 before Kid Rock became successful.  The primary questions before us are (1) whether the District Court erred in holding that a Michigan state court action, arising from the contracts, by the Williams group against Kid Rock is preempted by the Copyright Act under the developing doctrine of "complete preemption" and hence removable to the federal court as presenting federal copyright issues rather than state claims, and (2) whether the District Court erred in foreclosing the state claims under the three-year statute of limitations found in the Copyright Act.  In Section II below, we will incorporate the facts in more detail in our review of the state law claims brought in state court by the Williams group.  In the first section, we will discuss the doctrine of federal jurisdiction that allows the recharacterization and removal of such claims.

**I.  The District Court Correctly Applied the Doctrine of
Complete Preemption to Allow Removal**

Section 301 of the Copyright Act broadly preempts state law claims, and federal law vests exclusive jurisdiction over such preempted copyright claims in the federal courts.  Section 301 of the Copyright Act states that "all legal or equitable rights *that are equivalent* to any of the exclusive rights *within the general scope* of copyright as specified in § 106 in works of authorship that . . . come within the subject matter of copyright . . . are governed exclusively by this title. . . . [N]o person is entitled to any such right or equivalent right in any such work under the common law or statutes of any State."  17 U.S.C. § 301(a) (emphasis added).[1]  Section 1388(a), Title 28, further provides that "[t]he district courts shall have exclusive jurisdiction of any civil action arising under any act of Congress relating to . . . copyrights . . . .  Such jurisdiction shall be exclusive of the courts of the states in . . . copyright cases."  The Copyright Act is unusually broad in its assertion of federal authority.  Rather than sharing jurisdiction with the state courts as is normally the case, the statute expressly withdraws from the state courts any jurisdiction to enforce the provisions of the Act and converts all state common or statutory law "within the general scope of copyright" into federal law to be uniformly applied throughout the nation.

Under *Metropolitan Life Ins. Co. v. Taylor*, 481 U.S. 58, 64-65 (1987), the "complete preemption" doctrine serves to "recharacterize a state law claim . . . as an action arising under federal law" and "converts an ordinary state common law complaint into one stating a federal claim for purposes of the well-pleaded complaint rule."  Or as is stated in *Moran v. Rush Prudential HMO,*

———————

[1]The other provisions of the Copyright Act directly relevant to this case are: *17 U.S.C. § 106* ("the owner of copyright under this title has the exclusive rights to do and to authorize any of the following: (1) to reproduce the copyrighted work in copies or phonorecords; (2) to prepare derivative works based upon the copyrighted work; (3) to distribute copies or phonorecords of the copyrighted work to the public by sale or other transfer of ownership, or by rental, lease, or lending; (4) in the case of literary, musical, dramatic, and choreographic works, pantomimes, and motion pictures and other audiovisual works, to perform the copyrighted work publicly; and (5) in the case of literary, musical, dramatic, and choreographic works, pantomimes, and pictorial, graphic, or sculptural works, including the individual images of a motion picture or other audiovisual work, to display the copyrighted work publicly); *17 U.S.C. § 201* (vesting initial ownership of copyright upon creation and allowing for ownership of copyright to be "transferred in whole or in part by any means of conveyance or by operation of law"); *17 U.S.C. § 501* (creating private cause of action for copyright infringement); *17 U.S.C. § 507* ("No civil action shall be maintained under the provisions of this title unless it is commenced within three years after the claim accrued.").

*Inc.*, 230 F.3d 959, 967 (7th Cir. 2000), the complete preemption doctrine "permits recharacterization of a plaintiff's claim as a federal claim so that removal is proper" even though the complaint may not mention a federal basis of jurisdiction. The doctrine of complete preemption applies, for example, in the labor management collective bargaining field and to ERISA plans. In dissent, Justice Scalia criticizes the doctrine as the "federalize-and- remove dance" in *Beneficial National Bank v. Anderson*, 539 U.S. 1, 8 (2003); but, for a 7-2 majority, Justice Stevens follows the doctrine as enunciated in earlier cases. He holds that a state law usury claim against a national bank is "completely preempted" and removable when Congress vests exclusive jurisdiction in the federal courts after broadly preempting usury claims under the National Bank Act. The rationale is that in such situations the federal statutory laws "supersede both the substantive and remedial provision of state" law creating a strong form of federal preemption — presumably because of the additional need for a strong form of national uniformity implied by Congress when it made federal court jurisdiction exclusive after broadly preempting state law.

Since this case involves removal of claims stated only in state law terms, we must determine whether or not the doctrine of complete preemption applies to the Copyright Act. Although this Circuit and most other Circuits have not addressed the question directly, the Second and the Fourth Circuits have held that the doctrine of complete preemption applies in copyright cases. Most recently, the Second Circuit analyzed the Act in light of the *Anderson* case above and found that the doctrine of complete preemption clearly applies. *Briar Patch, Ltd. v. Phoenix Pictures, Inc.*, 373 F.3d 296 (2d Cir. 2004). In *Rosciszewski v. Arete Assoc., Inc.*, 1 F.3d 225 (4th Cir. 1993), the Fourth Circuit explained:

> The grant of exclusive jurisdiction to the federal courts over civil actions arising under the Copyright Act, combined with the preemptive force of § 301(a), compels the conclusion that Congress intended that state law actions preempted by § 301(a) of the Copyright Act arise under federal law. Accordingly, we hold that the preemptive force of § 301(a) of the Copyright Act transforms a state-law complaint asserting claims that are preempted by § 301(a) into a complaint stating a federal claim for purposes of the well-pleaded complaint rule. Since claims preempted by § 301(a) arise under federal law, removal of actions raising these claims to federal district court is proper.

We agree with the Second and Fourth Circuits. Congress has indicated that "national uniformity" in the strong sense of "complete preemption" is necessary in this field. The bulk of the Williams group's state law claims must be recharacterized as copyright infringement and copyright ownership claims.[2]

---

[2] We find that the district court was correct in its earlier ruling that Kid Rock removed the Williams parties' state claims to federal court in a timely manner under 28 U.S.C. § 1446(b), which allows for removal within thirty days of defendant receiving some "other paper from which it may first be ascertained that the case is one which is or has become removable." Production of the Songwriter's Agreement by Williams in April 2002 triggered a 30 day window for timely removal under § 1446(b)'s "other paper" provision.

## II. The District Court Correctly Concluded that All of the
## Williams Group's State Law Claims Are Time Barred

### A. The Preempted Claims

Williams claims that he entered into a partnership agreement with Kid Rock in February 1989 to form "Top Dog" Records to promote Kid Rock's career and for the two to share equally in the ownership of partnership property, income and expense. A few days later, Williams claims that Kid Rock transferred his interest in the partnership to a Michigan "production" company which then entered into an exclusive agreement with Kid Rock that precluded him from writing or performing songs for anyone else for one year (with two one-year options). Williams also alleges that three months later the Michigan production company and Kid Rock entered into contracts concerning Kid Rock's songs with a record company ("Zomba") and a music publisher ("Bow-Wow").

The parties agree, as Judge Edmunds found below, that these various 1989 alleged agreements were designed to control the ownership, performance rights and exploitation of copyrights on songs written by Kid Rock, including the performance, recording and distribution of those songs. The Williams group alleges that Kid Rock performed these songs and transferred to other parties the right to publish, record and distribute them, thereby breaching his contracts with Williams, the Michigan production company, the recording company and the publishing company.

Judge Edmunds held that these contract and tort claims basically assert that Kid Rock infringed the publication, performance and distribution rights of those claiming under the 1989 contracts and that the claims must, therefore, be recharacterized as copyright claims and governed by federal copyright law. The claims are that Kid Rock licensed the songs he had written to others in violation of the copyrights and the performance and distribution rights of the Williams group. All of these claims are "equivalent" to infringement claims. There is no meaningful "extra element," as some of the cases have put it,[3] that removes the reformulated claims from the policy of national

---

[3]In determining under § 301 whether or not a particular state law cause of action is "equivalent" to a federal copyright infringement action, most circuits (including this one) have referred to the "extra element test." *See Wrench v. Taco Bell Corp.*, 256 F.3d 446, 454 (6th Cir. 2001). Under this analytical device, if the state claim requires an "extra element," beyond those required for copyright infringement, then it is not "equivalent," and therefore not preempted. *Id.* If there is no "extra element," or the "extra elements" are merely "illusory," then the claim is equivalent to a copyright action, it is preempted by the Copyright Act and the federal courts have exclusive jurisdiction to hear it. *Id.* We have taken note of the difficulty of applying this test by stating generally "[t]he existence of an extra element precludes preemption only where the element changes the nature . . . of the action." *Stromback v. New Line Cinema*, 384 F.3d 283 (6th Cir. 2004); *see also Bowers v. Baystate Technologies, Inc.*, 320 F.3d 1317, 1324 (Fed. Cir. 2003) ("[C]laims might be preempted whose extra elements are illusory. . ."). For example, even though the Copyright Act contemplates the "transfer" of rights by contract, *see* 17 U.S.C. § 201(d), some courts have found that the contract itself or a promise within the contract provide the "extra element" foreclosing preemption. *See e.g.*, *Nat'l Car Rental Sys., Inc. v. Computer Assocs. Int'l, Inc.*, 991 F.2d 426, 431 (8th Cir. 1993) ("We conclude that the alleged contractual restriction on National's use of the licensed programs constitutes an extra element in addition to the copyright rights making this cause of action qualitatively different from an action for copyright."); *Dorsey v. Money Mack Music, Inc.*, 304 F.Supp.2d 858, 865 (E.D. La. 2003) ("The existence of a promise . . . renders plaintiff's claims qualitatively different from a copyright infringement claim, and thus cannot be preempted."); *see also*, Mark A. Lemley, *Beyond Preemption: The Law and Policy of Intellectual Property Licensing*, 87 Cal. L. Rev. 111, 143 (1999) ("Courts considering . . . preemption of contract terms have reached different results in different cases. A number of courts have preempted contracts under both patent law and copyright law. Other courts have refused to preempt contract terms asserted to be at odds with the copyright or patent statutes.").

The "extra element" test has received much criticism. One commentator said that it "simply states a conclusion. When is a right provided by state law qualitatively different, and how different in nature must it be to escape preemption?

uniformity established by the preemption provisions of § 301(a). To use Judge Friendly's phrase, they are "infused with . . . national interests," *T.B. Harms Co. v. Eliscu*, 339 F.3d 823, 826 (2d Cir. 1964), because the various publishing and performance rights of Kid Rock's songs should be the same in Michigan as they are in New York and other states.

The problem with the Williams group's claims under federal law is that on December 17, 1990, Kid Rock wrote a letter, forwarded to the defendants, flatly stating that he did not intend to work with the parties to the 1989 contracts with respect to the publishing, production or performance of his songs, "or any other area of [his] entertainment career." He made it clear that he regarded the songs he had written as his songs. Thereafter, he openly claimed exclusive ownership of the "Top Dog" label and the rights to his songs.[4] The December 1990 letter triggered the running of the federal copyright three-year statute of limitations for copyright infringement claims.[5] Because the defendants waited ten years to file suit on these claims, they are clearly barred by the statute of limitations.

Most of the defendants' non-contract claims, found in Counts 2 through 8 of their complaint, seek relief arising from the same set of transactions but under alternative theories — unjust enrichment, misrepresentation, conversion, and injunctive relief against further misappropriation of income derived from the songs. The defendants, again as the District Court held, may not escape the statute of limitations for copyright infringement merely by suing in tort and restitution. The District Court did not err in recharacterizing these claims as copyright claims. The policy of national uniformity inherent in copyright preemption is no less applicable to infringement claims that are described as sounding in tort or restitution rather than contract. The injunctive relief sought

---

In all but the simplest cases, the extra elements test cannot be applied with any certainty." Marshall A. Leaffer, Understanding Copyright Law § 11.7[C] (3d ed. 1999). Another described it this way:

> The problem with this test is that it does not provide any real guidance to the courts. There is always some difference between the state law and the Copyright Act, so a court that wants to avoid preemption can always find some difference, however small, that is the "extra element" needed to avoid preemption. The net result is that courts seem to first decide independently whether or not they think preemption should apply, and then label the result accordingly . . . . Thus, the "extra element" test has proved circular in practice, and the cases are ad hoc, inconsistent, or wrong.

Schuyler Moore, *Straightening Out Copyright Preemption*, 9 UCLA Ent. L. Rev. 201, 204 (2002).

[4]Kid Rock does not now claim ownership of the 13 songs on his first album, "Grits Sandwiches for Breakfast," stipulating that they are owned by Zomba and EB-Bran pursuant to the contracts between Ritchie, Bow-Wow, EB-Bran and Zomba. Ritchie Br. at 17 n.4.

[5]The district court applied the copyright principle that each new infringing act causes a new three year statutory period to begin. While this principle does apply to causes of action by an owner against an unknown third party, in closer relationships, such as when the parties are co-authors, the statutory period for any action to establish ownership begins to run whenever there is a "plain and express repudiation" of ownership by one party as against the other. *See Aalmuhammed v. Lee*, 202 F.3d 1227, 1230-31 (9th Cir. 2000); *Zuill v. Shanahan*, 80 F.3d 1366, 1369 (9th Cir. 1996). By applying this approach here, we are extending the current doctrine from co-authors to others in close relationships, such as those who transfer copyright ownership via contract. Since Kid Rock's letter in December 1990 provided a repudiation of ownership, the Williams parties had until December 1993 to bring an action contesting ownership or performance rights over any of the disputed Kid Rock songs. Since the first element of an infringement claim is ownership by the plaintiff and the Williams group is now time-barred from asserting ownership, it is only logical that their infringement actions must fail. As Nimmer puts it, the alternative approach (allowing infringement claims even though a free-standing ownership claim would be time-barred) leads to results that are "potentially bizarre." 3 M. Nimmer & D. Nimmer, Nimmer on Copyright § 12.05[C] (2004).

is for income derived from various performance, production, and distribution rights related to Kid Rock songs. The plaintiffs have simply waited too long to bring their action.

## B. The Non-Preempted Claims

Two of the Williams group's state law claims may not be "equivalent to" copyright claims. They did not involve either ownership or copyrightable material;[6] even so, both are time-barred under the applicable Michigan statutes of limitations.

First, Williams claims that Kid Rock violated his fiduciary duty to the original Top Dog Records Partnership when he incorporated his own company, also titled "Top Dog Records," in 1993 to compete with the original partnership. This claim does not implicate either of the elements of a copyright claim — ownership or infringement — and therefore should not be preempted by § 301. While these allegations might once have provided an actionable state law claim concerning the Top Dog name, the longest period provided under Michigan law for bringing a breach of fiduciary duty claim is six years. *See* M.C.L.A. § 600.5807(8). Considering Kid Rock's letter in December 1990 repudiating *all* aspects of his business relationship with the Williams parties, including the partnership, any suit regarding the breach of the partnership agreement was time-barred, at the latest, in December 1996. Alternatively, Kid Rock's public act of incorporating under the name "Top Dog" in 1993 provided sufficient notice to the Williams group to start the statutory period running at that time. Under this view, any partnership claims would have expired in 1999, two years before Williams filed his case in state court.

Second, Williams claims that Kid Rock breached the so-called "Supplemental Agreement" of March 1989, an agreement in the nature of an employment contract, with Kid Rock working as an independent contractor to recruit additional talent for Top Dog Records. He was to be paid a commission of 50% of all profits earned from exploitation of the other artists' work. Similarly, this contract does not involve either the ownership or copying of any songs or recordings and is therefore not preempted by § 301. Like the partnership fiduciary action discussed above, this claim is also time-barred under Michigan law. *See* M.C.L.A. 600.5807(8). Just as with the breach of fiduciary duty claim, the Williams parties received notice of Kid Rock's express repudiation of all aspects of their relationship in December 1990. Any contract or tort claims regarding any aspect of that relationship had to be brought within the appropriate statutory period, which began to run in December 1990.

## III. The District Court Accurately Held That the Williams Parties Abandoned Any Interest in the "Top Dog" Trademark

The District Court accurately concluded that the Williams parties abandoned their interest in the Top Dog trademark. The only entity that may have continued to use the Top Dog trademark after Kid Rock's repudiation (other than Kid Rock) was Zomba Records. Zomba is not a party to this suit and makes no claim against Kid Rock. As for the Williams group's argument that the related company doctrine applies to rescue their interest in the trademark, there is substantial authority, including the language of 15 U.S.C. § 1055, for the proposition that a claimant must exert control over the licensee in order for the doctrine to apply. *See* 15 U.S.C. § 1055; *Westco Group, Inc. v. K.B. & Assocs., Inc.*, 128 F. Supp. 2d 1082, 1088 (N.D. Ohio 2001) ("[A] licensor who engages in naked licensing abandons the trademark or trade name. . . . 'Thus, not only does the trademark owner have the right to control quality, when it licenses, it has the duty to control

---

[6]Nimmer states that a copyright infringement claim requires proof of two elements: "(1) ownership of a valid copyright and (2) copying of constituent elements of the work that are original." 4 M. Nimmer & D. Nimmer, Nimmer on Copyright § 13.01.

quality.'"); *see also* Edward K. Esping, Annotation, *Granting of "Naked" or Unsupervised License to Third Party As Abandonment of Trademark*, 118 A.L.R. Fed. 211(2004) ("[M]ost courts take the position that the existence of a legal right of the licensor to control the quality of its licensee's activities is neither necessary nor sufficient, since it is the control in fact of the quality of the licensee's good or services which is dispositive . . . "). There is no evidence of such control by any of the Williams parties over the license or over Zomba, the alleged licensee, between 1990 and 2000. So we agree with the court below that Williams has abandoned the mark.

## IV. The Williams Parties' Post-Judgment Motions Were Properly Denied by the District Court

After summary judgment was entered in favor of Kid Rock, the Williams group made a motion for reconsideration and a motion to vacate the judgment based on lack of subject matter jurisdiction and newly discovered evidence. Given the bases for our holding here, it is clear that the district court's denial of these motions should not be disturbed. The District Court reached the correct result because the doctrine of complete preemption applies to require removal and all claims are time barred.

For the reasons discussed above, the District Court's opinion in favor of Kid Rock is hereby AFFIRMED.