*RECOMMENDED FOR FULL-TEXT PUBLICATION*
Pursuant to Sixth Circuit Rule 206
File Name: 07a0060p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

---

ROGER MILLER MUSIC, INC., and MARY A. MILLER,
      *Plaintiffs-Appellants/Cross-Appellees,*

              *v.*

SONY/ATV PUBLISHING, LLC,
      *Defendant-Appellee/Cross-Appellant.*

Nos. 05-6824/6880

>

---

Appeal from the United States District Court
for the Middle District of Tennessee at Nashville.
No. 04-01132—William J. Haynes, Jr., District Judge.

Argued: November 28, 2006

Decided and Filed: February 13, 2007

Before: COLE and McKEAGUE, Circuit Judges; BREEN, District Judge.[*]

---

## COUNSEL

**ARGUED:** W. Robert Thompson, KAY, GRIFFIN, ENKEMA & BROTHERS, Nashville, Tennessee, for Appellants. Barry I. Slotnick, LOEB & LOEB, New York, New York, for Appellee. **ON BRIEF:** W. Robert Thompson, John J. Griffin, Jr., Caroline M. Gobbell, KAY, GRIFFIN, ENKEMA & BROTHERS, Nashville, Tennessee, for Appellants. Barry I. Slotnick, LOEB & LOEB, New York, New York, for Appellee.

---

## OPINION

---

        R. GUY COLE, JR., Circuit Judge. Plaintiffs-Appellants Mary Arnold Miller and Roger Miller Music, Inc. (the "Appellants") brought this copyright-infringement-and-ownership action against Defendant-Appellee Sony/ATV Publishing, LLC ("Sony"). Mary Miller is the wife of the late Roger Miller, a renowned country-music singer and songwriter, and Roger Miller Music, Inc. ("RMMI") is an assignee. Sony is the successor-in-interest to Tree Publishing Co., Inc. ("Tree"), the publishing company Miller contracted with from 1958 until his death in 1992. In their motion for summary judgment before the district court, Appellants asserted numerous claims: (1) Appellants are the legal owners of the renewal copyrights in Miller's 1958-1963 and 1964 songs; (2) Sony is not a beneficial owner of the renewal copyrights in the 1964 songs; and (3) Sony is liable for

---

[*]The Honorable J. Daniel Breen, United States District Judge for the Western District of Tennessee, sitting by designation.

copyright infringement because it does not have an implied, non-exclusive license to exploit those songs. Sony filed a motion for judgment on the pleadings asserting that (1) Appellants' ownership and infringement claims were untimely; (2) Sony owns the renewal copyrights in the 1958-1963 songs; (3) Sony is a beneficial owner of the renewal copyrights in the 1964 songs; and (4) Sony is not liable for copyright infringement because it has an implied, non-exclusive license in Miller's songs. For the following reasons, we **AFFIRM** the district court's ruling that (1) Sony is the owner of the renewal copyrights in Miller's 1958-1963 songs; (2) Appellants' ownership claims are timely; and (3) Appellants' infringement claims are timely for Sony's conduct between December 21, 2001, and December 21, 2004. Further, we **REVERSE** the district court's ruling that Sony's statements regarding Appellants' ownership of the renewal copyrights in the 1964 songs were judicial admissions and **REMAND** for a determination as to whether the district court can hear Sony's argument that it owns the renewal copyrights in Miller's 1964 songs.

## I. BACKGROUND

**A. Factual History**

Roger Miller was a famous country-music singer and songwriter who died on October 25, 1992. In 1958, 1960, and 1962, Miller and Tree (Sony's predecessor) executed publishing agreements that conveyed the original copyrights in Miller's songs to Tree. The 1958, 1960, and 1962 publishing agreements all provide, in relevant part, as follows:

> 1. [Miller] hereby sell[s], assign[s], tranfer[s] and deliver[s] to [Tree] all musical compositions heretofore written and/or composed by [Miller] . . . and [Miller] hereby agree[s] to sell, assign, transfer and deliver to [Tree] all musical compositions which [Miller] shall hereafter write during the term of this contract and any extensions and renewals hereof.

> 2. All rights in and to music and/or lyrics for musical compositions as soon as conceived, composed and/or written by [Miller] during the term of this agreement and any extensions and renewals hereof shall immediately be vested in [Tree] together with the right to copyright the same throughout the world.

(Joint Appendix "JA" 32, 146, 249.) In exchange for the assignment of the copyrights in his songs, Miller was entitled to royalty payments. The 1991 agreement was the final agreement executed between Miller and Tree before Miller's death. That agreement provided, in relevant part, as follows:

> Tree shall have the sole and exclusive right to exercise and authorize others to exercise all rights and interests in and to Said Works, throughout the world and in perpetuity, including under all copyrights therein . . . .

(JA 487.)

The 1958, 1960, and 1962 agreements required that Miller and Tree execute a separate agreement, entitled "Exhibit A," each time Miller delivered a song to Tree:

> 6. As each completed musical composition is delivered to [Tree], [Miller] and [Tree] are to execute a separate agreement with respect to each such work in the printed form hereto annexed and marked "Exhibit A" . . . and both [Miller] and [Tree] are to be bound by the terms, covenants and conditions of said agreements as if herein fully set forth.

(JA 33, 146, 249.) The Exhibit A agreement contains language indicating that Miller transferred to Tree, not only the original copyrights in his songs, but the renewal copyrights as well:

> 2. [Miller] hereby sell[s], assign[s], transfer[s], and set[s] over unto [Tree] its successors and assign[ees], the said musical composition (lyrics, music and title) and each and every arrangement thereof, together with the world-wide copyright thereof, and the right to secure copyright therein for the entire world, with all of their right, title, and interest, both legal and equitable therein . . . *and all other rights now known or hereafter to come into existence.*
>
> 5. [Miller] hereby authorize[s] and empower[s] [Tree] to *renew*, pursuant to law, for and in the name of [Miller], if living, the copyright of the said musical composition, and to execute and deliver in the name of the composers a formal *assignment of each renewal copyright* to [Tree], for its own use and benefit subject to the payment of the same royalties as hereinbefore provided.

(JA 447-48) (emphasis added). Although the parties agreed in the publishing agreements to execute an Exhibit A agreement each time Miller delivered a new song to Tree, an Exhibit A agreement was never executed for any of Miller's songs. In 1969, the parties agreed to waive the requirement, in the prior publishing agreements, that an Exhibit A agreement be executed for each song:

> As a matter of convenience for the parties the signing of separate agreements is hereby waived, and the terms and conditions as to royalties and the payment thereof shall be deemed part of the main agreement and shall be made a part thereof.

(JA 446.)

The renewal copyright of a work is the sixty-seven-year period that begins once the original copyright term of twenty-eight years expires. 17 U.S.C. § 304(a)(1)(A). It is undisputed that Miller transferred the copyrights in his songs, for the original copyright term, to Tree, and later to Sony. However, because renewal copyrights can be transferred independently of the original copyright term, the parties' dispute is over ownership of the renewal copyrights in Miller's 1958-1963 songs and 1964 songs. Miller's 1958-1963 songs were protected for an original copyright term of twenty-eight years and the copyrights were renewed prior to his death. Miller's 1964 songs also had an original copyright term of twenty-eight years but the renewal term did not begin until after Miller's death; the renewal copyright term began on January 1, 1993.

## B.  Procedural History

Appellants filed the present action in the district court for the Middle District of Tennessee on December 21, 2004. Appellants filed a motion for summary judgment, arguing that they owned the renewal copyrights in the songs published under the 1958, 1960, and 1962 publishing agreements. Further, Appellants claimed that Sony was liable for copyright infringement because Sony did not have an implied, non-exclusive license in Miller's songs. Sony filed a motion for judgment on the pleadings, contending that (1) Appellants' ownership and infringement claims were time-barred; (2) Miller assigned his renewal copyrights to Sony for the 1958-1963 songs, and therefore Sony is the owner of those copyrights; and (3) alternatively, if Sony lacked an ownership interest in the songs, it was nonetheless not liable for infringement because Sony had an implied, non-exclusive license in Miller's songs.

On July 11, 2005, the district court concluded that Sony was the owner of the renewal copyrights in the 1958-1963 songs because Miller validly assigned his interest to the renewal copyrights in those songs. *Roger Miller Music, Inc. v. Sony/ATV Publ'g, LLC*, No. 3:04-01132, 2005 U.S. Dist. LEXIS 24813, at *44 (M.D. Tenn. July 11, 2005). The district court also

determined that, although Appellants were the owners of the renewal copyrights in the 1964 songs, Sony was an implied, non-exclusive licensee and was therefore not liable for copyright infringement. *Id.* at *54. Accordingly, the district court granted, in part, Sony's motion for judgment on the pleadings and granted, in part, Appellants' motion for summary judgment.

Sony then filed a motion to alter or amend the district court's order, under Rule 59(e), arguing that Sony is the owner of the renewal copyrights in the 1964 songs. In its prior motion for judgment on the pleadings, Sony admitted that the Appellants were the owners of the renewal copyrights in the 1964 songs: "Because Miller did not survive until the renewal vesting date for the [1964 songs], which was January 1, 1993," Appellants were the owners of the renewal copyrights and Sony was only a beneficial owner. (Def.'s Mem. in Supp. of Mot. to Alter or Amend 18-19). In that prior motion, Sony interpreted 17 U.S.C. § 304 as requiring that the author be alive at the start of the copyright renewal term for the author's prior assignments to vest. (*Id.*) In response to Sony's Rule 59(e) motion, Appellants argued that Sony's prior statements conceding that it was not the owner of the renewal copyrights in the 1964 songs were judicial admissions. (Pl.'s Resp. to Def.'s Mot. to Alter or Amend 1-2.)

On November 9, 2005, the district court denied Sony's motion to alter or amend its prior order, concluding that Sony's prior statements, conceding Appellants' ownership of the renewal copyrights in the 1964 songs, were binding judicial admissions. *Roger Miller Music, Inc. v. Sony/ATV Publ'g, LLC*, No. 3:04-1132, slip op. at 3 (M.D. Tenn. Nov. 9, 2005).

Both Appellants and Sony filed cross-appeals of the district court's judgment.

## II. DISCUSSION

### A. Standard of Review

We review a district court's grant of a motion for judgment on the pleadings de novo. *EEOC v. J.H. Routh Packing Co.*, 246 F.3d 850, 851 (6th Cir. 2001). The standard of review for a judgment on the pleadings is the same as that for a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6). *Id*. We "construe the complaint in the light most favorable to the plaintiff, accept all of the complaint's factual allegations as true, and determine whether the plaintiff undoubtedly can prove no set of facts in support of the claims that would entitle relief." *Grindstaff v. Green*, 133 F.3d 416, 421 (6th Cir. 1998) (citing *Meador v. Cabinet for Human Res.*, 902 F.2d 474, 475 (6th Cir. 1990)).

Further, this Court reviews a district court's grant of summary judgment de novo. *Tysinger v. Police Dep't of Zanesville*, 463 F.3d 569, 572 (6th Cir. 2006). Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). The moving party bears the burden of proving that there are no genuine issues of material fact. *Bennett v. City of Eastpointe*, 410 F.3d 810, 817 (6th Cir. 2005). This burden is satisfied "by demonstrating that the nonmoving party lacks evidence to support an essential element of its case." *Pack v. Damon Corp.*, 434 F.3d 810, 813 (6th Cir. 2006). Summary judgment is inappropriate where "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby*, *Inc.*, 477 U.S. 242, 248 (1986). "In evaluating a motion for summary judgment, the evidence must be viewed in the light most favorable to the nonmoving party." *Pack*, 434 F.3d at 813. The non-moving party "must set forth specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e); *see also Pack*, 434 F.3d at 814. "The mere existence of a scintilla of evidence" that supports the non-moving party's claims is insufficient to defeat summary judgment. *Hopson*, 306 F.3d 427, 432 (6th Cir. 2002); *see also Anderson*, 477 U.S. at 251.

**B. Merits**

    1.    *Statute of Limitations*

Under the Copyright Act, a claim for copyright infringement or ownership has a three-year statute of limitations. 17 U.S.C. § 507(b). When claims for both infringement and ownership are alleged, the infringement claim is timely only if the corresponding ownership claim is also timely. *Ritchie v. Williams*, 395 F.3d 283, 288 n.5 (6th Cir. 2005). A claim for copyright ownership "is barred three years from 'plain and express repudiation' of authorship." *Id.* (citing *Aalmuhammed v. Lee*, 202 F.3d 1227, 1230-31 (9th Cir. 2000)). A copyright ownership claim "accrues only once, and if an action is not brought within three years of accrual, it is forever barred." *Zuill v. Shanahan*, 80 F.3d 1366, 1369 (9th Cir. 1996); *see also Davis v. Meridian Films, Inc.*, 14 Fed. App'x 178, 181 (4th Cir. 2001) (unpublished opinion). In contrast, a claim for copyright infringement can accrue more than once because each infringement is a distinct harm. *Bridgeport Music, Inc. v. Rhyme Syndicate Music*, 376 F.3d 615, 621 (6th Cir. 2004). In *Ritchie*, we noted that "each new infringing act causes a new three year statutory period to begin." 395 F.3d at 288 n.5.

    *(a)*    *Appellants' Ownership Claim*

The district court's conclusion that the Appellants' ownership claim is not time-barred is correct because there was no plain and express repudiation of ownership by Sony or Appellants as required by *Ritchie*. Sony argues that its actions, such as filing the application for renewal of the copyrights in Miller's songs, openly and exclusively licensing Miller's songs during their renewal term, and paying Miller and Appellants royalties for Sony's exploitation of the renewal copyrights, amounted to a plain and express repudiation of Appellants' ownership claims to the renewal copyrights in Miller's songs. (Appellee's Br. at 37.)

In *Ritchie*, the defendant's ownership claim was untimely because the plaintiff, Robert Ritchie, also known as Kid Rock, had expressly told the defendants, in a letter, that he had exclusive ownership of the songs he had written. 395 F.3d at 288. Specifically, the *Ritchie* Court noted that Kid Rock's letter "made it clear that he regarded the songs he had written as his songs" and subsequently "claimed exclusive ownership" of the rights to those songs. *Id.* Accordingly, we concluded that Kid Rock's letter constituted a plain and express repudiation of defendant's ownership claim and started the three-year-statute-of-limitations period. In the present case, there was no similar plain and express repudiation of ownership. In 1995, Appellants sent Sony an audit report, entitled "Report on Application of Agreed-Upon Procedures Relating to Sony/Tree on Behalf of the Estate of Roger Miller P.E. April 30, 1979 Through December 31, 1994." The audit letter discloses any underpayment of royalties to Miller and his estate from April 30, 1979, through December 31, 1994. Unlike Kid Rock's letter in *Ritchie*, the audit letter does not address ownership of the renewal copyrights and does not clearly claim ownership over those copyrights. Accordingly, because there was no plain and express repudiation of ownership, the district court correctly held that Appellants' ownership claims are not time-barred.

    *(b)*    *Appellants' Infringement Claim*

A copyright-infringement claim "accrues when a plaintiff knows of the potential violation or is chargeable with such knowledge." *Bridgeport Music, Inc.*, 376 F.3d at 621. In *Bridgeport Music*, we explained that "[b]ecause each act of infringement is a distinct harm, the statute of limitations bars infringement claims that accrued more than three years before suit was filed, but does not preclude infringement claims that accrued within the statutory period." *Id.* In April 1995, Appellants sent Sony an audit report, which examined the publishing agreements between Miller and Tree and the royalties paid under those agreements. The district court correctly determined that, as of 1995, the Appellants were on notice that Sony was exploiting Miller's songs because the audit report revealed that Sony was licensing and collecting royalties for songs during the renewal term

of those songs. The Appellants did not take action against Sony until December 21, 2004, when they filed this suit. Accordingly, Appellants' copyright-infringement claims for Sony's exploitation before December 21, 2001, are barred under the three-year statute of limitations. Further, because each infringement has its own three-year limitations period, the district court correctly determined that infringement claims against Sony for Sony's use of Miller's songs from December 21, 2001, to December 21, 2004 were timely.

> 2.     *Ownership of the Renewal Copyrights in Miller's Songs*

> (a)     *Miller's 1958-1963 songs*

The renewal term of a copyrighted work is distinct from the original copyright term and can therefore be transferred independently of the original copyright. *P.C. Films Corp. v. MGM/UA Home Video, Inc.*, 138 F.3d 453, 456-57 (2d Cir. 1998) (stating that the renewal period "is not merely an extension of the original copyright term but a 'new estate . . . clear of all rights, interests or licenses granted under the original copyright'") (quoting *G. Ricordi & Co. v. Paramount Pictures, Inc.*, 189 F.2d 469, 471 (2d Cir. 1951)). There is a strong presumption against the conveyance of renewal-copyright interests simultaneous with the conveyance of the original-copyright interest. *Corcovado Music Corp. v. Hollis Music*, 981 F.2d 679, 684 (2d Cir. 1993) (explaining that the "presumption against conveyance of renewal rights serves the congressional purpose of protecting authors' entitlement to receive new rights in the 28th year of the original term"). Therefore, a valid transfer or assignment of a renewal-copyright interest must expressly grant rights in the renewal copyright. *Id.*; *see also* 3-9 Melville B. Nimmer & David Nimmer, *Nimmer on Copyright* § 9.06[a][1] (2006) (noting that courts are reluctant to "infer a transfer of the renewal expectancy absent express language"). An assignment by an author that merely references his "copyright" in general terms, without mentioning the renewal rights, does not include a conveyance of the author's renewal interests. *Fred Fisher Music Co. v. M. Witmark & Sons*, 318 U.S. 643, 653 (1943).

Nevertheless, "[s]o long as the parties' intent is clear, a transfer of copyright need not include any particular language." *Gilleland v. Schanhals*, 55 Fed. App'x 257, 260 (6th Cir. 2003) (unpublished opinion) (citing *Radio Television Espanola S.A. v. New World Entm't, Ltd.*, 183 F.3d 922, 927 (9th Cir. 1999) ("No magic words must be included in a document to satisfy § 204(a)" of the Copyright Act.)). General words of assignment, such as "forever," "perpetual," and "hereafter," can be sufficient to transfer renewal rights if a court concludes that a transfer comports with the parties' intent. *P.C. Films Corp.*, 138 F.3d at 457; *Siegel v. Nat'l Periodical Publ'n, Inc.*, 508 F.2d 909, 913 (2d Cir. 1974) (noting that "general words of assignment can include renewal rights if the parties had so intended").

An author of a copyrighted work can assign the right to the renewal copyright before the renewal period commences: "An assignment by an author of his renewal rights made before the original copyright expires is valid against the world, if the author is alive at the commencement of the renewal period." *Miller Music Corp. v. Charles N. Daniels, Inc.*, 362 U.S. 373, 375 (1960). An author, therefore, has the freedom to assign both his original and renewal-copyright interests at the same time, even if the renewal-copyright interest has not yet vested. *Broad. Music, Inc.*, 396 F.3d at 768-69. If the author assigns his renewal copyrights and the renewal copyright term begins during the author's lifetime, the author is bound by the assignment. *Id.* at 768. If, however, the author dies before vesting of the renewal copyright, the party to whom the renewal-copyright interest was conveyed loses the entitlement to that interest. *Id.*; *Miller Music Corp.*, 362 U.S. at 378 (explaining that "assignees of renewal rights take the risk that the rights acquired may never vest in their assignors").

When interpreting the various publishing agreements between Miller and Sony, the district court properly relied on Tennessee law. *See Yount v. Acuff Rose-Opryland*, 103 F.3d 830, 835 (9th

Cir. 1996) (explaining that state contract law "determines the rights and obligations arising under a publishing contract that assigns a copyright"). Under Tennessee law, a court's task when interpreting a contract is "to ascertain the intention of the parties based upon the usual, natural, and ordinary meaning of the contractual language." *Teter v. Republic Parking Sys.*, 181 S.W.3d 330, 342 (Tenn. 2005) (quoting *Guiliano v. Cleo, Inc.*, 995 S.W.2d 88, 95 (Tenn. 1999)). The Tennessee Supreme Court explained in *Teter* that if a contract's language is unambiguous, the literal meaning of the language controls. *Id.* Additionally, under Tennessee law, a writing may be incorporated by reference into a written contract. If a writing is incorporated by reference, both writings must be construed together. *Oman Constr. Co. v. Tennessee C.R. Co.*, 370 S.W.2d 563, 570 (Tenn. 1963); *Real Estate Mgmt. v. Giles*, 293 S.W.2d 596, 599 (Tenn. Ct. App. 1956) ("[W]here several instruments are made as part of one transaction, they will be read together and each will be construed with reference to the other."). Lastly, under Tennessee law, "the interpretation placed upon a contract by the parties thereto, as shown by their acts, will be adopted by the court and . . . to this end not only the acts but the declarations of the parties may be considered." *Hamblen County v. Morristown*, 656 S.W.2d 331, 335 (Tenn. 1983).

The district court correctly determined that the renewal copyrights in the 1958-1963 songs belonged to Sony. Appellants, however, assert that the renewal copyrights were never assigned to Sony. Appellants argue that the renewal copyrights are a separate property right and therefore could have been transferred only if the parties had executed the Exhibit A agreements—the only agreement specifically transferring the renewal copyrights. Because the publishing agreements made no reference to the renewal copyrights and the Exhibit A agreements were never executed, Appellants contend that Sony could not have received the renewal copyrights for Miller's 1958-1963 songs. (Appellants' Br. 17-18.) Appellants are incorrect.

First, the language in the Exhibit A agreement is sufficient to convey the renewal-copyright interests because the language evinces a clear intent by Miller to transfer to Tree, and later to Sony, the renewal copyrights in the 1958-1963 songs. The Exhibit A agreement specifically states that Miller authorizes Sony to *renew* the copyrights in his songs: "The Composers hereby authorize and empower the Publisher to renew, pursuant to law, . . . the copyright of the said musical composition . . . and deliver . . . a formal assignment of each renewal copyright to [Tree]. . . ." The express use of the term "renew" here evinces the intent to convey the renewal interest; this is particularly true because even more generic terms, such as "forever" and "hereafter," have sufficed to convey an interest in the renewal copyrights. *See, e.g.*, *P.C. Films Corp.*, 138 F.3d at 457 (noting that use of the word "perpetual" conveys renewal rights); *Corcovado*, 981 F.2d at 685 (explaining that use of the word "forever" or "hereafter" is sufficient to convey renewal rights); *see also Hayes v. Carlin Am., Inc.*, 168 F. Supp. 2d 154, 157 (S.D.N.Y. 2001) ("Use of the particular word 'renewal' is not necessary to transfer renewal rights.").

Second, the 1969 agreement successfully incorporated into the parties' prior publishing agreements the language assigning to Tree the renewal copyrights in Miller's songs. The Appellants, however, contend that the language in the Exhibit A agreement, granting Sony the right to the renewal copyrights, was not incorporated into the publishing agreements because the 1969 agreement incorporated the provision in the Exhibit A agreement relating only to royalties and not the provision relating to renewal copyrights. (Appellants' Br. 17-18.) The Appellants' argument hinges on language in the 1969 agreement stating that "the signing of separate [Exhibit A] agreements is hereby waived, and the terms and conditions as to royalties and the payment thereof shall be deemed part of the main agreement and shall be made a part thereof"—language specifically referencing royalty payments but not renewal copyrights. (JA 446.) The district court dismissed this argument, concluding instead that the parties' conduct indicated an intent to incorporate the entire Exhibit A agreement, including the language assigning Miller's renewal-copyright interests, into the publishing agreements. The district court is correct.

The district court properly relied on the parties' course of dealings to ascertain their intent regarding ownership of the renewal copyrights. *See, e.g., Reed Bros. Stone Co., v. Pittman Constr. Co.*, 101 S.W.2d 478, 557 (Tenn. Ct. App. 1936) (explaining that a court can look to the course of dealing between the parties when interpreting a contract); *First Tennessee Bank, N.A. v. Nunn & Assoc., Inc.*, No. 03A01-9103-CH-96, 1991 Tenn. App. LEXIS 541, at *11-12 (Tenn. Ct. App. July 8, 1991) (unpublished opinion) ("Guidance in explaining or interpreting an ambiguous word in a contract . . . is found in the course of dealings between the parties . . . ."). Two particular experiences between the parties indicate Miller's intent to transfer his renewal-copyright interests.

First, the publishing agreements expressly state that the parties intend to be bound by the Exhibit A agreement: the publishing agreements (for 1958, 1960, and 1962) declare that "both [Miller] and [Tree] are to be bound by the terms, covenants, and conditions of [the Exhibit A agreement] as if herein fully set forth." The parties indicated an intent to be bound by the terms of the unexecuted Exhibit A agreement because the 1969 agreement does not alter language in the original publishing agreements binding the parties to all the terms of the Exhibit A agreement. Therefore, although the 1969 agreement specifically mentions only the royalty provisions of the Exhibit A agreement, nothing in the parties' course of dealing shows that the parties did not intend to be bound by all the provisions of the Exhibit A agreement.

Second, Sony paid Miller, and his estate, royalties during the original copyright term and during the renewal term, once the original copyright term lapsed, without any objection from the Appellants. Sony correctly points out that "the parties' thirty-year business relationship, during which Sony/ATV renewed and openly exploited the renewal copyrights, paying Miller and Appellants their royalties," indicates Miller's intent to assign the renewal copyrights to Sony. (Appellee's Br. 15, 20.) Accordingly, based on the plain language of the publishing agreements between Miller and Tree and the parties' course of dealing, we conclude that Sony is the owner of the renewal copyrights in Miller's 1958-1963 songs.

### (b)        *Miller's 1964 Songs*

The district court concluded that the renewal copyrights for the 1964 songs vested in Mary Miller and Roger Miller's children upon his death. *Roger Miller Music, Inc.*, 2005 U.S. Dist. LEXIS 24813, at *44-45. The court based its conclusion, in part, on the parties' statements that ownership of the renewal copyrights in the 1964 songs vested in Miller's wife and children because Miller died prior to the start of the renewal term for those songs. In its motion for judgment on the pleadings, Sony conceded that under 17 U.S.C. § 304, because Miller died prior to the first day of the renewal term for the 1964 songs, the renewal copyright vested in the author's widow and children, and not in Sony. (Def.'s Mem. in Supp. of its Mot. for J. on the Pleadings 18-19.) The renewal term for the 1964 songs began on January 1, 1993, and Miller died on October 25, 1992.

Following the court's decision, Sony filed a motion to alter or amend the court's judgment, under Rule 59(e), arguing that it had incorrectly interpreted 17 U.S.C. § 304(a)(2)(B)(i) and consequently Sony, and not the Appellants, owns the renewal copyrights in the 1964 songs. (Appellee's Br. 32-36.) The district court denied the motion, concluding that Sony's statements, admitting that Mary Miller was the owner of the renewal copyrights in the 1964 songs, were judicial admissions.

We review a district court's determination as to whether a particular statement constitutes a judicial admission under the abuse-of-discretion standard. *MacDonald v. GMC*, 110 F.3d 337, 340 (6th Cir. 1997). A judicial admission is generally treated as binding. *New Amsterdam Cas. Co. v. Waller*, 323 F.2d 20, 24 (6th Cir. 1963). Judicial admissions dispense with the need to offer proof on facts "about which there is no real dispute." *Id.* Thus, these admissions "go to matters of fact which, otherwise, would require evidentiary proof." *Id.* In *MacDonald*, we reiterated that we are

"reluctant to treat [statements dealing with opinions and legal conclusions] as binding judicial admissions." 110 F.3d at 341. Further, we explained that "[j]udicial admissions . . . typically concern only matters of fact." *Id.* In *MacDonald*, General Motor's counsel made statements regarding the defendant's negligence and whether the defendant had caused the car accident that was the subject of the litigation. The district court concluded that the comments by General Motor's counsel were not judicial admissions, and we affirmed the court's determination because the "statements dealt with opinions and legal conclusions." *Id.* at 341.

In the present case, Sony's statements dealt with legal conclusions, and not matters of fact, and therefore the district court erred in concluding that the statements were judicial admissions. Sony conceded that it was not the owner of the renewal copyrights in the 1964 songs based on its interpretation of § 304 and its reading of the Supreme Court's decision in *Miller Music*. These statements by Sony are not statements regarding matters of fact; they are statements regarding Sony's interpretation of the law given the facts of the case. The *MacDonald* court specifically stated that judicial admissions "concern only matters of fact." *Id.* Accordingly, because Sony's statements do not concern matters of fact, we reverse the district court's holding that Sony's statements are judicial admissions.

Further, under Rule 59(e), parties cannot use a motion for reconsideration to raise new legal arguments that could have been raised before a judgment was issued. *Sault Ste. Marie Tribe of Chippewa Indians v. Engler*, 146 F.3d 367, 374 (6th Cir. 1998) (stating that "[a] motion under Rule 59(e) is not an opportunity to re-argue a case"); *FDIC v. World Univ., Inc.*, 978 F.2d 10, 16 (1st Cir. 1992) (explaining that a Rule 59(e) motion "may not be used to argue a new legal theory"). Rather, a motion under Rule 59(e) "must either clearly establish a manifest error of law or must present newly discovered evidence." *World Univ., Inc.*, 978 F.2d at 16; *FDIC v. Meyer*, 781 F.2d 1260, 1268 (7th Cir. 1986); *see also Walker v. Michigan Dep't of Corr.*, 128 Fed. App'x 441, 447 (6th Cir. 2005) (unpublished opinion). The district court, however, did not consider Sony's new legal argument (that it was the owner of the renewal copyrights in the 1964 songs) because the court concluded that Sony's earlier statements were judicial admissions. In light of the court's error on this point, we remand the case to the district court so it can determine whether it should hear Sony's new argument regarding its ownership of the renewal copyrights in the 1964 songs.

Further, because we are remanding the case for a determination as to whether Sony can raise its argument that it is the owner of the renewal copyrights in the 1964 songs, we need not decide whether the district court correctly determined that Sony has an implied, non-exclusive license in Miller's 1964 songs. A determination as to whether Sony has an implied license in the 1964 songs is relevant only if the district court concludes that Sony is not the owner of the renewal copyrights in those songs, because a license is a defense to a claim of copyright infringement. *Johnson v. Jones*, 149 F.3d 494, 500 (6th Cir. 1998) (explaining that the existence of an implied license in a copyrighted work is an affirmative defense to a claim of copyright infringement); *see also John G. Danielson, Inc. v. Winchester-Conant Prop., Inc.*, 322 F.3d 26, 40 (1st Cir. 2003) ("Uses of the copyrighted work that stay within the scope of a nonexclusive license are immunized from infringement suits."). In short, if the district court concludes that Sony is the owner of the renewal copyrights in the 1964 songs, it is immaterial whether Sony also has an implied, non-exclusive license in those songs.

### III. CONCLUSION

For all the reasons set forth above, we **AFFIRM** the district court's ruling that (1) Appellants' ownership claims were timely; (2) Plaintiff's infringement claims for Sony's use of Miller's songs from December 21, 2001, to December 21, 2004 were timely; and (3) Sony owns the renewal copyrights in Miller's 1958-1963 songs. Further, we **REVERSE** the district court's ruling that Sony's statements conceding that Appellants are the owners of the renewal copyrights in the

1964 songs were judicial admissions and **REMAND** for a determination as to whether the district court can consider Sony's argument that it owns the renewal copyrights in Miller's 1964 songs.