ROGERS, J., delivered the opinion of the court in which SUTTON, J., joined, and KEITH, J., joined in the result. KEITH, J. (pp. 729-33) delivered a separate opinion concurring in the judgment.
OPINION
ROGERS, Circuit Judge.
In June 2012, nineteen-year-old D.E. took a wrong turn on his way to summer camp. Instead of arriving at the camp in Michigan, he inadvertently ended up at the international border with Canada. When he told the toll-booth operator of his mistake, the operator directed him to turn around without crossing the border and to merge into a lane of traffic containing motorists arriving from Canada. That lane of traffic funneled D.E. to a Customs and Border Protection (“CBP”) inspection booth. Despite his explanation that he had not crossed the border, CBP officers searched his vehicle and discovered marijuana and drug paraphernalia. After pleading guilty to a misdemeanor charge in state court, D.E. brought the instant civil rights complaint against four CBP officers and two unidentified' individuals, claiming that they violated his Fourth Amendment rights by detaining him and searching his car without cause. Because a traveler’s subjective intent not to leave the country does not provide an exception to the government’s authority to conduct suspicion-less searches of vehicles at the border, the district court did not err in dismissing D.E.’s suit. D.E.’s remaining claims — that the district court abused its discretion in denying his Rule 59(e) motion for reconsideration and in denying his motion for a protective order — also lack merit.
• According to D.E.’s complaint, when he inadvertently arrived at the Canadian border crossing at the Blue Water Bridge in Port Huron, Michigan, an unidentified tollbooth operator advised him that he could turn around without entering Canada. The operator provided him with a laminated card, which was prepared by CBP and stated on the front:
You are being allowed to turn around without traveling to Canada. Please *726 present this card, along with your identification to an open CBP inspection booth prior to departing. Thank you.
The back of the card stated:
All persons, baggage, and merchandise arriving in the Customs territory of the United States or from places outside thereof are liable to inspection and search by a Customs official.
The toll-booth operator instructed D.E. to merge into a lane of traffic containing motorists arriving from Canada and to proceed to a primary inspection booth. At the primary inspection booth, Officer Fiery-Repic reviewed D.E.’s laminated card and license and directed him to proceed to a secondary inspection area. An unidentified officer then escorted D.E. to the station house. Meanwhile, Officer Hillard conducted a canine search of the car, and Officer Vittorini physically searched the car. When Officer Vittorini opened the trunk of D.E.’s car, Officer Hillard informed him that the dog had alerted on the backpack in the trunk. Officer Vittorini then searched the backpack and found marijuana and drug paraphernalia. Officer Vittorini entered the station house, handcuffed D.E., searched him, and detained him in a jail cell for'about one hour until Port Huron police arrived to take him into custody. D.E. also alleges that CBP Supervisor Beaudry approved of the actions of the other defendants, failed to properly train them, and failed to prevent them from engaging in unlawful searches.
While the instant suit was pending, D.E. pled guilty in state court to misdemeanor possession of drug paraphernalia and was sentenced to one month probation pursuant to the Holmes Youthful Trainee Act (“HYTA”), Mich. Comp. Laws §§ 762.11-.16, et seq. Subsequently, the district court in this case granted the defendants’ motion to dismiss, reasoning that the defendants did not violate D.E.’s Fourth Amendment rights, because routine searches at the border do not require a warrant, probable cause, or reasonable suspicion, and that the defendants are entitled to qualified immunity. D.E. moved for reconsideration pursuant to Federal Rule of Civil Procedure 59(e) and for a protective order to seal the record or redact his name from all filed documents. The district court denied the motion for reconsideration, concluding that D.E. had failed to identify a palpable defect in the proceedings or establish that correction of such a defect would result in a different disposition of the case. The district court also denied D.E.’s motion for a protective order, concluding that he failed to show compelling reasons to keep his identity secret. Finally, the district court denied D.E.’s motion for reconsideration of the order denying his motion for a protective order. On appeal, D.E. identifies nineteen issues for review. His primary challenge is to the district court’s ruling that the defendants properly subjected him to a border search. He mainly argues that international travel is required for officers to conduct suspicionless searches at the border, and also argues that the district court failed to credit his allegations that the purpose of searching turnaround motorists is either to verify citizenship or to look for evidence of general criminal activity (purposes which he claims made the search of his vehicle' illegal), that the defendants were not authorized to detain him after his citizenship was verified and after they determined that they would not bring federal charges against him, and that the suspicionless canine drug search was unlawful because possession of marijuana can be legal in Michigan in some circumstances. Additionally, he argues that the district court abused its discretion when it denied his motions for reconsideration and for a protective order. Finally, D.E. also filed a motion for a protective order in this court, which was denied with *727 out prejudice to reconsideration by this panel.
D.E. has not stated a claim upon which relief can be granted, because, accepting his factual allegations as true, the defendants’ actions were lawful under the border-search exception to the Fourth Amendment’s warrant and probable cause requirements. Contrary to D.E.’s various arguments, routine searches of vehicles at the border do not require a warrant or any level of suspicion, United States v. Flores-Montano, 541 U.S. 149, 152-53, 124 S.Ct. 1582, 158 L.Ed.2d 311 (2004), regardless of whether the motorist intends to cross the border or has arrived at the border area inadvertently, United States v. Humphries, 308 Fed.Appx. 892, 896 (6th Cir. 2009). That D.E. did not cross the border is irrelevant, as officers may conduct suspicionless searches on outbound persons and effects, which have not yet crossed the border, see United States v. Boumelhem, 339 F.3d 414, 420-23 (6th Cir. 2003). That D.E. subjectively did not intend to cross the border is also irrelevant. There is no reliable way for the CBP officers to tell the difference between a motorist who has just crossed the border or who intends to cross the border and a “turnaround motorist” who is at the border area by mistake. It would be dangerous (and quite stupid) for CBP officers to assume that every traveler who claims to be there by mistake — or who possesses an easily fabricated laminated card — is telling the truth, especially considering that D.E.’s vehicle was in the same lane as motorists arriving from Canada. CBP officers are not infallible lie detectors capable of correctly determining the subjective intent of travelers at the border. Instead, because the “Government’s interest in preventing the entry of unwanted persons and effects is at its zenith at the international border,” Flores-Montano, 541 U.S. at 152, 124 S.Ct. 1582, officers may conduct suspicionless searches of vehicles at the border (or at its functional equivalent, Almeida-Sanchez v. United States, 413 U.S. 266, 272, 93 S.Ct. 2535, 37 L.Ed.2d 596 (1973)) without regard to the reasons why motorists are at the border.
D.E.’s arguments to the contrary are without merit. His reliance on United States v. Ortiz, 422 U.S. 891, 95 S.Ct. 2585, 45 L.Ed.2d 623 (1975), is misplaced. Ortiz, which held that officers may not search vehicles at traffic checkpoints removed from the border or its functional equivalent without consent or probable cause, id. at 896-97, 95 S.Ct. 2585, does not constrain officers’ ability to search vehicles that are, in fact, at the border or its functional equivalent. Additionally, D.E.’s claim that the purpose of the search was illegal miss-' es the mark, as officers need no specific purpose or suspicion to search a vehicle at the border, see Flores-Montano, 541 U.S. at 152-53, 124 S.Ct. 1582. Instead, “searches made at the border, pursuant to the longstanding right of the sovereign to protect itself by stopping and examining persons and property crossing into this country, are reasonable simply by virtue of the fact that they occur at the border.” United States v. Ramsey, 431 U.S. 606, 616, 97 S.Ct. 1972, 52 L.Ed.2d 617 (1977). Nor was CBP’s detention of D.E. unlawful. D.E.’s detention for roughly one hour was reasonable, given that “delays of one to two hours at international borders are to be expected,” Flores-Montano, 541 U.S. at 155 n.3, 124 S.Ct. 1582, and that the detention was for the sole purpose of waiting for local law enforcement to take custody of D.E. after marijuana and drug paraphernalia had been discovered. Furthermore, the fact that marijuana can be legally possessed in Michigan in some circumstances — which were not the circumstances under which D.E. possessed it— has no bearing on whether the CBP officers could conduct a suspicionless canine sniff on a vehicle stopped at the border. A *728 canine sniff is not a constitutionally cognizable infringement under the Fourth Amendment when conducted during a lawful traffic stop, see Illinois v. Caballes, 543 U.S. 405, 409-10, 125 S.Ct. 834, 160 L.Ed.2d 842 (2005), and, even if it were, as explained above, both the stop and the search of D.E.’s vehicle were lawful under the border-search exception. Finally, contrary to D.E.’s arguments, the CBP officers had statutory authority to conduct a suspicionless border search on his vehicle pursuant to 19 U.S.C. § 1581(a), which grants general authorization for border searches of vehicles, see Boumelhem, 339 F.3d at 419-20.
Additionally, the district court did not abuse its discretion when it denied D.E.’s Rule 59(e) motion. A Rule 59(e) motion must present newly discovered evidence or clearly establish a manifest error of law. Roger Miller Music, Inc. v. Sony/ATV Publ’g, LLC, 477 F.3d 383, 395 (6th Cir. 2007). D.E. did not present any newly discovered evidence. Nor did he present any persuasive arguments establishing a manifest error of law. D.E. argued in his motion that the district court did not address some of the arguments he presented or accept as true his allegations regarding CBP’s programmatic purpose in stopping turnaround motorists. However, in denying his motion for reconsideration, the district court explained that, although it did not specifically discuss each of the arguments he asserted in his lengthy brief, it did consider them when concluding that his claims lacked merit.
Lastly, the district court did not abuse its discretion when it denied D.E.’s motion for a protective order. As a general matter, a complaint must state the names of all parties. Fed. R. Civ. P. 10(a); Doe v. Porter, 370 F.3d 558, 560 (6th Cir. 2004). Under certain circumstances, however, the district court may allow a plaintiff to proceed under a pseudonym by granting a protective order. Porter, 370 F.3d at 560. D.E. sought such a protective order, arguing that anonymity would further the objectives of Michigan’s HYTA program under which he pled guilty. Under HYTA, which is aimed at helping young people avoid the stigma of a criminal record resulting from an immature act or decision, all proceedings regarding the criminal charge are closed to public inspection. See Mich. Comp. Laws § 762.14(4). He also argued that a public record revealing his name in this case would subject him to negative scrutiny from prospective future employers. In determining whether to grant such an order, district courts consider: (1) whether the plaintiff is suing to challenge governmental activity; (2) whether prosecution of the suit will compel the plaintiff to disclose information “of the utmost intimacy”; (3) whether the litigation compels plaintiff to disclose an intention to violate the law, thereby risking criminal prosecution; and (4) whether the plaintiff is a child. Porter, 370 F.3d at 560 (citing Doe v. Stegall, 653 F.2d 180, 185-86 (5th Cir. 1981)).
The district court did not abuse its discretion in denying D.E.’s motion for a protective order, because he did not articulate concerns that outweigh the presumption of openness in judicial proceedings. The prosecution of D.E.’s claims did not require him to disclose information “of the utmost intimacy” or compel him to disclose any intent to violate the law, nor was he a child when he filed this lawsuit. As for potential negative scrutiny from future employers, D.E., as the district court explained, “forfeited his ability to keep secret his actions at the international border ... when he sued United States Customs and Border Patrol agents.” The district court also did not abuse its discretion when it denied his motion for reconsideration, because D.E. did not present newly discovered evidence in support of his motion or demonstrate a manifest error of law. For these same *729 reasons, we decline to reconsider our prior order denying D.E.’s motion filed in this court for a protective order. However, in the exercise of our discretion, in this published opinion we refer to D.E. by his initials.
For the foregoing reasons, the judgment of the district court is affirmed.
CONCURRENCE IN THE JUDGMENT